**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Carhartt, Inc.,

|                          |                                  |
|--------------------------|----------------------------------|
| Plaintiff,               | Case No. 17-cv-13604             |
| v.                       | Judith E. Levy                   |
|                          | United States District Judge     |
| Innovative Textiles, Inc.,|                                 |
|                          | Mag. Judge R. Steven             |
| Defendant/Third-         | Whalen                           |
| Party Plaintiff,         |                                  |
| v.                       |                                  |
| Gentry Mills, Inc.,      |                                  |
| Third-Party              |                                  |
| Defendant.               |                                  |

_____/

**OPINION AND ORDER GRANTING GENTRY MILLS, INC.'S**
**MOTION TO DISMISS THE THIRD-PARTY COMPLAINT [18]**

## I. Background

After Carhartt, Inc. found out that its fire resistant garments

containing Innovative Textiles, Inc.'s ("ITI") fire resistant fabric were not

actually fire resistant, Carhartt sued ITI. Carhartt brings claims for

breach of contract, negligence, and other theories against ITI, alleging

that ITI's decision to change the fibers it incorporated into its fire resistant fabric from an industry standard fiber to a new, untested competitor caused the defect in Carhartt's products. ITI then filed a third-party complaint against Gentry Mills, Inc. ("GMI"), a subcontractor involved in ITI's fabric production business.

ITI alleges that GMI is responsible for the defects in the products that it sold to Carhartt because "[a]ll of the fabric Carhartt contends was defective was dyed, treated, finished, and tested by GMI before it was ultimately supplied to Carhartt." (Dkt. 8 at 3.) ITI brings five counts against GMI: breach of contract (Count I), breach of express warranty (Count II), breach of implied warranty (Count III), common law indemnity (Count IV), and implied contractual indemnity (Count V).

GMI now moves to dismiss the third-party complaint. This matter was fully briefed by the parties, and, pursuant to Local Rule 7.1 the Court determines that no hearing is necessary.

## II.    Standard of Review

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684

F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Choice of Law

ITI argues that North Carolina law should apply to the allegations in its third-party complaint, and, although GMI did not affirmatively raise this issue, it appears not to contest it.

When a Michigan federal court exercises jurisdiction based on the diversity of the parties, the "conflict of laws rules to be applied by the federal court in [Michigan] must conform to those prevailing in [Michigan's] state courts." *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In actions based in contract, Michigan courts apply §§ 187 and 188 of the Second Restatement of Conflict of Laws. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 124 (1995). Where the parties have not agreed upon the applicable law, § 188 dictates that

courts apply "the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws § 188(1) (1971); *see also Chrysler Corp.*, 448 Mich. at 128. The state with the most significant relationship to the transaction and parties is determined by looking to "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement § 188(2).

Though this action is in a Michigan federal court, North Carolina has the most significant relationship to the transaction and the parties.[1] Both parties are North Carolina corporations, and they each maintain their principal place of business there. (Dkt. 8 at 1-2.) Though the third-party complaint does not contain detailed factual allegations about the interactions between the parties, it is reasonable to assume that because they are both headquartered in North Carolina, "the place of contracting, place of negotiation of the contract, place of performance, and location of

---

[1] The third-party complaint does not allege the parties' agreement contained a choice of law clause.

the subject matter of the contract" are all North Carolina. *See* Restatement § 188(2)(a)-(d) (internal formatting altered).

In addition, none of the § 188 factors indicate that Michigan has an interest in applying its law to this case. This action is in Michigan court by operation of a choice of forum clause in the agreement between Carhartt and ITI. (Dkt. 1-2 at 15.) That clause has no bearing on the relationship between ITI and GMI, and there is nothing else about the parties' relationship that indicates they would reasonably expect to litigate pursuant to Michigan law.

For these reasons, North Carolina law applies to the allegations in the third-party complaint.

## IV. Analysis

### a. Breach of Contract

The first count of ITI's complaint is for breach of contract. It alleges that "GMI breached its contractual obligations to ITI to provide goods and services in accordance with ITI's purchase orders and industry standards." (Dkt. 8 at 3.)

Under North Carolina law, a party alleging breach of contract must demonstrate "(1) the existence of a valid contract and (2) breach of the

terms of the contract." *Martinez v. Univ. of N. Carolina*, 223 N.C. App. 428, 432 (2012) (quoting *Long v. Long*, 160 N.C. App. 664, 668 (2003)).

ITI fails to allege sufficient facts to sustain its breach of contract claim. First and foremost, ITI does not allege the existence of a contract. The third-party complaint's only mention of a contract between ITI and GMI is the language quoted above, alleging that "GMI breached its contractual obligations to ITI." (Dkt. 8 at 3.) There is no explanation, for example, of when the contract was formed, who the parties are, or whether it was oral or written. Absent such information, the third-party complaint contains only "labels or conclusions," *Twombly*, 550 U.S. at 555, insufficient to state "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.[2]

Second, even if this mention of a contract between the parties were a sufficient allegation of the existence of a contract, the third-party

---

[2] ITI argues that its breach of contract allegations are sufficient to state a claim because they satisfy the pleading standard articulated by the North Carolina Supreme Court. (Dkt. 29 at 16.) However, because "federal courts sitting in diversity 'apply state substantive law and federal procedural law,'" ITI's third-party complaint is evaluated against the federal pleading standard set forth in Fed. R. Civ. P. 8 and the Supreme Court cases interpreting that rule. *Saab Auto AB v. General Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010)).

complaint says nothing about the obligations of the parties under the contract, or how GMI breached those obligations. ITI argues the third-party complaint "included allegations that [ITI] contracted with [GMI] to 'dye[], treat[], finish[] and test[]' the fabric it subsequently provided to Carhartt." (Dkt. 29 at 15.) However, there are no allegations of a contract for those services in the complaint. ITI cites ¶7 of the complaint as a description of the parties' contractual obligations, but that paragraph only describes the services GMI provided ITI. It does not mention a contract, nor does it state what the contract required.

Third, if the Court were to assume that the contract obligated GMI to "dye[], treat[], finish[] and test[]" ITI's fabric, the complaint still does not explain how GMI breached the contract. ITI alleges that GMI serviced "[a]ll of the fabric Carhartt contends was defective" and that it "was relying on GMI's skill and judgment to select and furnish goods and services suitable for ITI's fabric." (Dkt. 8 at 3.) But these allegations are not sufficiently specific to "give the defendant fair notice of what the claim is." *See Twombly,* 550 U.S. at 555. The third-party complaint does not apprise GMI of what it did to cause the fabric to be defective, or even

if the defect was caused by GMI's services. Instead, the complaint only informs GMI that it treated the defective fabric.

Because the third-party complaint fails to allege the existence of a contract, the terms of the contract, and the manner in which it was breached, the third-party complaint contains only "a formulaic recitation of the elements of a cause of action" for breach of contract. *See Twombly*, 550 U.S. at 555. Accordingly, Count I of the third-party complaint is dismissed.

### b. Breach of Warranty

ITI's second set of claims is for breach of warranty. It alleges that if ITI is found liable to Carhartt, GMI breached both express and implied warranties. GMI allegedly breached an express warranty that the "fabric [GMI] dyed, treated, finished, and tested met industry standards, including flammability specifications." (Dkt. 8 at 4.) It allegedly breached an implied warranty of "merchantability and fitness for a particular purpose by provid[ing] goods and services that were neither merchantable nor fit for their particular purpose." (Dkt. 8 at 5.)

*i. Breach of Express Warranty*

GMI argues that ITI's breach of express warranty count should be dismissed because the third-party complaint contains insufficient factual allegations to state a claim, and, even if it did, GMI only provided services to ITI, not goods. ITI responds by arguing that ITI provided goods and pleaded sufficient facts to state a claim for breach of express warranty.

Under North Carolina law, a breach of express warranty claim requires the plaintiff to demonstrate "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." *Hall v. T.L. Kemp Jewelry, Inc.*, 71 N.C. App. 101, 104 (1984). "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." *Id.*

The third-party complaint does not contain more than "a formulaic recitation of the elements of a cause of action" for breach of express warranty. *Twombly*, 550 U.S. at 555. In the third-party complaint, ITI alleges that "GMI knew ITI was relying on GMI's skill and judgment to select and furnish goods and services suitable for ITI's fabric," that "GMI

expressly warranted that the fabric it dyed, treated, finished, and tested met industry standards, including flammability specifications," and that if "Carhartt's principal allegations are found to be valid, then GMI breached its express warranties." (Dkt. 8 at 3, 5.) These allegations recite the elements of breach of express warranty, but, as with ITI's contract claim, fail to apprise GMI how, exactly, it created or breached the warranty. Specifically, the complaint contains no allegation regarding what statement or contract clause created the warranty, nor does it contain an allegation concerning what defect in GMI's product caused ITI's liability. It is not enough for ITI to state that GMI handled the allegedly defective products; it must state what aspect of that handling breached the warranty.

In addition, an express warranty claim only attaches where there has been a sale of goods, and the third-party complaint contains no facts indicating that GMI sold ITI goods.[3] *See Hall*, 71 N.C. App. at 104. Under

---

[3] ITI's primary argument that GMI sold it goods is that nothing in two invoices it attaches to its motion "reflects that Gentry Mills only provided services." (Dkt. 29 at 22.) These invoices were not attached as exhibits to the complaint. (*See* Dkt. 8.) To avoid treating the motion as "one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d), the Court will not "consider evidence outside the complaint." *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001).

North Carolina law, when an agreement between two parties contains both goods and services courts look to whether "their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved." *Hensley v. Ray's Motor Co. of Forest City*, 158 N.C. App. 261, 265 (2003). This is sometimes called the "predominant factor test." *Id.*

Here, taking the allegations in the complaint as true, the "predominant factor" of the agreement between ITI and GMI is services. The only allegations in the complaint about the work GMI did for ITI is that GMI "dyed, treated, finished and tested" ITI's fabrics. (Dkt. 8 at 3.) These are all services, not goods. Moreover, the complaint makes no mention of the chemical sales that ITI contends is the "predominant factor" of the parties' agreement. The only reference to goods in the complaint is that "GMI knew ITI was relying on GMI's skill and judgment to select and furnish goods and services suitable for ITI's fabric." However, this statement provides no information about what goods GMI actually sold to ITI, and, accordingly, is not more than the mere "labels

and conclusions" rejected by the Supreme Court as insufficient to satisfy Fed. R. Civ. P. 8. *See Twombly*, 550 U.S. at 555.

Because the third-party complaint contains no allegations that GMI sold ITI goods and no explanation as to how GMI breached an alleged express warranty, ITI fails to state a claim for breach of express warranty. Accordingly, Count II of the third-party complaint is dismissed.

### ii. Breach of Implied Warranty

ITI also argues that GMI breached an implied warranty of merchantability and fitness for a particular purpose if ITI is liable to Carhartt.

A plaintiff must prove four elements to make a claim for breach of implied warranty: "(1) that the goods bought and sold were subject to an implied warranty of merchantability; (2) that the goods did not comply with the warranty in that the goods were defective at the time of sale; (3) that [its] injury was due to the defective nature of the goods; and (4) that damages were suffered as a result." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 683 (2002) (quoting *Morrison v. Sears, Roebuck & Co.,* 319 N.C. 298, 301 (1987)) (internal quotation marks removed). "The burden is

upon the purchaser to establish a breach by the seller of the warranty of merchantability . . . by showing that a defect existed at the time of the sale." *Id.* (quoting *Cockerham v. Ward*, 44 N.C. App. 615, 625 (1980)). As with breach of express warranty claims, breach of implied warranty claims only attach when there is a sale of goods. *Id.* (noting that warranty claims arise out of the Uniform Commercial Code, which only applies to the sale of goods).

ITI's breach of implied warranty claim fails for two reasons. First, ITI has not carried its burden of "showing that a defect existed at the time of sale." *See DeWitt*, 355 N.C. at 672. The third-party complaint contains no allegation about what defect was present in GMI's products, and contains no factual allegations that explain how the defect was present at the time of sale. Absent such allegations, no claim for breach of implied warranty exists.

Second, ITI's breach of implied warranty claim fails because the complaint does not allege GMI sold ITI goods. As explained above, the complaint does not specify with any particularity what goods ITI purchased from GMI, and instead alleges a relationship based on the

provision of services. Accordingly, ITI failed to state a claim for breach of implied warranty.

For these reasons, Count III of the third-party complaint is dismissed.

c. Indemnification

ITI's last set of claims is for indemnification. According to the complaint, if ITI is liable to Carhartt, "that liability will have arisen solely as a result of GMI's failure to provide goods and services conforming to its contractual obligations and industry standards," thus entitling ITI to indemnification from GMI. (Dkt. 8 at 5.) ITI also suggests that the contractual relationship between itself and GMI implied a right of indemnification.

GMI counterargues that no such right to indemnification was implied in any contract between the parties.

Under North Carolina law, a "contract of indemnity need not be express; indemnity may be recovered if the evidence establishes an implied contract. In addition, a right to indemnity exists whenever one party is exposed to liability by the action of another who, in law or equity, should make good the loss of the other." *McDonald v. Scarboro*, 91 N.C.

App. 13, 22 (1988). Put another way, there are three theories by which a party may establish a right to indemnity: "(1) an express contract; (2) a contract implied-in-fact; or (3) equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied-in-law." *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 38 (2003).

Here, there is no allegation that an express contract between ITI and GMI contains an indemnification clause, so only the latter two theories are relevant.

### i. *Indemnification by Contract Implied-in-Fact*

North Carolina law recognizes an implied right of indemnity in a contract between two parties. That "implication is derived from the relationship between the parties, circumstances of the parties' conduct, and that the creation of the indemnitor/indemnitee relationship is derivative of the contracting parties' intended agreement." *Kaleel Builders*, 161 N.C. App. at 38. Importantly, "the essence of such a claim is the intent of the parties to create an indemnitor/indemnitee relationship." *Ne. Solite Corp. v. Unicon Concrete, LLC*, 102 F. Supp. 2d 637, 640 (M.D.N.C. 1999) (quoting *Terry's Floor Fashions v. Georgia-*

*Pacific Corp.*, No. 97-CV-683, 1998 WL 1107771 at *8 (E.D.N.C. July 23, 1998)).

In the context of subcontractor relationships, "a right of indemnity under a contract implied-in-fact is inappropriate where . . . both parties are well equipped to negotiate and bargain for [indemnity] provisions." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 180 N.C. App. 257, 267 (2006), *aff'd,* 362 N.C. 269 (2008); *see also Kaleel Builders*, 161 N.C. App. at 40 (explaining that indemnity implied-in-fact arises when the parties relationship is "master-servant" or an "agency-type relationship" rather than an "independent contractor" relationship). Courts evaluating the contractual relationships between contractor and subcontractor "should not lose sight of the fact that the plaintiff could have 'freely negotiated . . . protection for itself' but chose otherwise. Accordingly, [a] [p]laintiff must allege 'special circumstances from which such an agreement might be implied' to establish a right to indemnity." *Ne. Solite Corp.*, 102 F. Supp. 2d at 640-41 (quoting *Terry's Floor Fashions*, 1998 WL 1107771 at *8) (some internal formatting removed).

GMI and ITI do not have the type of relationship that allows or requires the court to read an implied right of indemnity into a contract.

Despite the lack of clarity regarding the exact nature of the parties' contractual relationship, there is little doubt that GMI is ITI's subcontractor. The parties do not have a master-servant or an agency relationship. Instead, GMI is a commercial entity that provided services as a subcontractor and "both parties are well equipped to negotiate and bargain for" indemnity provisions in any contracts between them. *See Schenkel*, 180 N.C. App. at 267. "[T]here is nothing in the allegations that suggests establishing an indemnitor/indemnitee relationship was at the essence or intent of the agreement" between the parties, *see Kaleel Builders*, 161 N.C. App. at 40-41, and there are no allegations of other "special circumstances from which [an indemnity] agreement might be implied." *See Ne. Solite Corp.*, 102 F. Supp. 2d at 641. Indeed, the bare-bones allegations in the third-party complaint allege nothing unique or special about the parties' subcontractor relationship. *See Kaleel Builders*, 161 N.C. App. at 40-41 ("For this Court to read a right of indemnity implied-in-fact into such bald allegations would be to do so in every general and subcontractor agreement, thus infringing upon this state's long standing and coveted principle of freedom of contract.").

Accordingly, ITI has failed to plead a claim for implied-in-fact indemnity, and Count V of the third-party complaint is dismissed.

### ii. *Indemnification Implied in Law*

Indemnity implied-in-law is "more an equitable remedy than an action in and of itself," *Kaleel Builders*, 161 N.C. App. at 41, and is a "legal fiction used to avoid unfairness." *Carl v. State*, 192 N.C. App. 544, 558 (2008) (quoting *Ne. Solite Corp.*, 102 F. Supp. 2d at 641). "For indemnification implied-in-law . . . North Carolina law requires there be an underlying injury sounding in tort." *Kaleel Builders*, 161 N.C. App. at 41; *see also CBP Res., Inc. v. SGS Control Servs., Inc.*, 394 F. Supp. 2d 733, 741 (M.D.N.C. 2005) ("Defendant is correct that both implied-in-law indemnity and contribution require an underlying tort injury.").

When "indemnity implied-in-law arises from an underlying tort, [] a passive tort-feasor pays the judgment owed by an active tort-feasor to the injured third-party." *Kaleel Builders*, 161 N.C. App. at 39. Often described as "primary and secondary liability," an active tortfeasor is required to pay a judgment on behalf of a passive tortfeasor when:

> (1) they are jointly and severally liable to the plaintiff; and (2) either (a) one has been passively negligent but is exposed to liability through the active negligence of the other or (b) one

alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former."

*CBP Res., Inc. v. SGS Control Servs., Inc.*, 394 F. Supp. 2d 733, 746 (M.D.N.C. 2005) (quoting *Edwards v. Hamill*, 262 N.C. 528, 531 (1964)). Implied-in-law indemnity is not available "when both defendants breach substantially equal duties owed to the plaintiff." *Id.*

ITI's argument as to why it is entitled to implied-in-law indemnity from GMI appears to center on the idea that Carhartt's primary complaint is not one for active negligence. GMI argues in reply that Carhartt's complaint contains no allegations for which GMI could be derivatively liable.

Carhartt alleges three theories of tort damages against ITI: negligence (Count III), fraud and misrepresentation (Counts IV-VI), and false advertising under the Lanham Act (Count VII).[4] For each of these

---

[4] ITI argues that these tort claims should be dismissed because they are precluded by the contract claims in Carhartt's complaint. The Court will not address that argument here, as it is more appropriately brought in a motion to dismiss Carhartt's complaint.

However, if ITI were to succeed on that theory, its indemnity implied-in-law claim would fail. ITI suggests that indemnification implied-in-law actions can arise out of contractual liability as well as tort liability, and there is some support for that position in case law. *See, e.g. Cox v. Shaw*, 263 N.C. 361, 367 (1965) (noting that a "contract implied in law is a quasi contract, which may result either from a tortious

claims, the primary underlying factual allegation is that ITI changed the

type of fiber it used to make its fire resistant fabric from a well-regarded

industry standard fiber to an untested new competitor without first

determining if the new fiber met the necessary fire resistance standards.

Carhartt's alleged tort damages arise from ITI's failure to test the new

fiber and to disclose the change to Carhartt while continuing to produce

fabric for Carhartt's line of fire resistant garments.

---

wrong, as in our case, or from one that is contractual"); *Carl*, 192 N.C. App. at 558
(citing *Cox*); *Ne. Solite Corp.*, 102 F. Supp. 2d at 641 (same). However, ITI does not
identify any cases in which a court actually found indemnity implied-in-law based on
contractual liability, and the Court is not aware of any such cases.

Assuming North Carolina courts recognize claims for indemnity implied-in-law
arising solely out of contract claims, ITI could not recover from GMI on these grounds.
Carhartt alleges that ITI breached the contract between it and Carhartt by selling
Carhartt fabric that did not meet the specifications for fire resistance in the contract.
ITI's fabric allegedly failed to meet those specifications because ITI changed the fibers
it used to make the fabric from a type widely accepted within the insudstry to a
different, less well-known type. According to the complaint, after it discovered the
fiber change, Carhartt tested the pre-change fabric against the post-change fabric
and found the pre-change fabric to be in compliance. (Dkt. 1 at 12.) The third-party
complaint at issue here only alleges that GMI "dyed, treated, finished, and tested"
the fabric before delivery. (Dkt. 8 at 3.) It does not contain any allegations about
GMI's role in the fiber switch that would expose ITI to contract liability, the time
periods GMI participated in ITI's fabric production (e.g. pre-switch, post-switch, or
both), or whether GMI tested the fabric for flame resistant qualities. Absent any
allegations to these effects, there is nothing in the complaint to indicate that GMI
caused ITI to breach its contract with Carhartt, and, thus, ITI is not entitled to
indemnification implied-in-law for any contractual liability it may incur.

Taking all of the allegations in the third-party complaint as true, it still contains no allegations "to state a claim [for indemnity implied-in-law] that is plausible on its face." *See Iqbal*, 556 U.S. at 678. As discussed above, the complaint contains almost no information about the relationship between ITI and GMI. It alleges only that "[a]ll of the fabric that Carhartt contends was defective was dyed, treated, finished, and tested by GMI before it was ultimately supplied to Carhartt" and that "GMI knew that ITI was relying on GMI's skill and judgment to select and furnish goods and services suitable for ITI's fabric." (Dkt. 8 at 3.) These broad statements give no indication that GMI owed any duty to Carhartt such that it is "jointly and severally liable to the plaintiff" along with ITI. *See CBP Res. Inc.,* 394 F. Supp. 2d at 733.

These statements also do not explain how GMI was involved in the allegedly tortious conduct, even if it did owe a duty to Carhartt. There is no information in the complaint about how GMI's conduct caused ITI's fabric to fail to meet Carhartt's fire resistance specifications. For example, the third-party complaint lacks allegations that GMI tested the new fibers for fire resistance and falsely informed ITI that the fibers passed the tests, or that GMI's fabric dyeing processes degraded the fire

resistant nature of the fabric. Accordingly, the complaint does not allege either "(a) [ITI] has been passively negligent but is exposed to liability through the active negligence of [GMI] or (b) [GMI] alone has done the act which produced the injury but [ITI] is derivatively liable for the negligence of the former." *See CBP Res. Inc.,* 394 F. Supp. 2d at 733.

Because ITI has not plead facts indicating that GMI exposed it to tort liability through GMI's active negligence, ITI has not "state[d] a claim [for indemnity implied-in-law] that is plausible on its face." *See Iqbal*, 556 U.S. at 678. Accordingly, Count IV of the third-party complaint is dismissed.

## V. Conclusion

For the reasons set forth above, GMI's motion to dismiss the third-party complaint (Dkt. 18) is GRANTED, and ITI's third-party complaint is DISMISSED.

IT IS SO ORDERED.

Dated: June 11, 2018        s/Judith E. Levy
Ann Arbor, Michigan        JUDITH E. LEVY
        United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 11, 2018.

<u>s/Shawna Burns</u>
SHAWNA BURNS
Case Manager