UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Carhartt, Inc.,

        Plaintiff,

Case No. 17-cv-13604

v.

Judith E. Levy
United States District Judge

Innovative Textiles, Inc.,

        Defendant/Third-
        Party Plaintiff,

Mag. Judge R. Steven Whalen

v.

Gentry Mills, Inc.,

        Third-Party
        Defendant.

_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART GENTRY MILLS, INC.'S <u>MOTION FOR RECONSIDERATION [39]</u>**

Innovative Textiles, Inc. ("ITI") filed a third-party complaint against Gentry Mills, Inc. ("GMI") alleging that GMI is liable for claims arising from a contract dispute brought by Carhartt, Inc. ("Carhartt") against ITI. GMI successfully moved to dismiss Innovative Textiles' first third-party complaint based on pleading deficiencies. The Court granted

leave for ITI to file an amended third-party complaint. GMI asks the Court to reconsider, arguing that ITI's amendments are futile.

I. Background

An outline of this case is explained in the Court's previous opinion and order granting third-party defendant, GMI's Motion to Dismiss. (Dkt. 33.) In short, Carhartt initially sued third-party plaintiff, ITI, for breach of contract based on ITI's failure to sell it sufficiently fire-resistant fabric as specified in an agreement. ITI then filed a third-party complaint against GMI alleging that GMI failed to properly treat the fabric ITI eventually sold to Carhartt. (Dkt. 8.) The original third-party complaint, which contained very few factual allegations, was dismissed pursuant Fed. R. Civ. P. 12(b)(6). (Dkt. 33.) GMI's current motion for reconsideration challenges the order granting ITI's motion for leave to amend and file an amended third-party complaint. (Dkt. 39.)

As set forth in the July 16, 2018 order granting leave to amend (Dkt. 36), the amended third-party complaint includes a much more developed set of factual allegations. ITI has set forth its relationship with GMI and detailed the specifications regarding the chemicals and treatment it

purchased from GMI. The new factual allegations are explored in more detail, as relevant, in the discussion below. (Dkt. 36.)

The amended third-party complaint also includes additional causes of action. The eight counts are now: breach of contract for the sale of goods (Count I); breach of express warranties (Count II); breach of implied warranties (Count III); violation of North Carolina UCC § 25-2-314 requiring merchantable goods (Count IV); violation of implied warranty of fitness for a particular purpose (Count V); breach of contract (Count VI); negligence (Count VII); and indemnification implied-in-law (Count VIII). The Court's current review of the amended third-party complaint is limited the to the issue of futility, as set forth in an earlier order. (Dkt. 41.)

## II. Standard of Review

To prevail on a motion for reconsideration under Local Rule 7.1, a movant must "not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). "A 'palpable defect' is a defect that is obvious, clear, unmistakable, manifest or plain."

*Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997) (citations omitted).

When a party seeks to amend after a responsive filing, "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). But a "court need not grant leave to amend, however, where amendment would be 'futile.'" *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id.* (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)). Thus, the Court reviews the amendments under the same standard as if there were a pending motion to dismiss.

Fed. R. Civ. P. 12(b)(6) requires the Court to "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it

must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III. Discussion

#### a. Breach of Contract [Counts I & VI]

ITI's amended third-party complaint includes two counts for breach of contract. Count I will be dismissed as duplicative. *Moran v. Ruan Logistics*, 1:18-cv-223, 2018 U.S. Dist. LEXIS 159648, at *7 (S.D. Ohio Sept. 18, 2018). ITI does not oppose dismissal of Count I. (Dkt. 50 at 4.) Only Count VI's claim for breach of contract for goods and services remains.

Under North Carolina law[1], a party alleging breach of contract must demonstrate "(1) the existence of a valid contract and (2) breach of the terms of the contract." *Martinez v. Univ. of N. Carolina*, 223 N.C. App. 428, 432 (2012) (quoting *Long v. Long*, 160 N.C. App. 664, 668 (2003)). ITI's first third-party complaint failed on both prongs. ITI failed to allege sufficient facts as to either the existence of a valid contract or

---

[1] North Carolina law governs the alleged contracts. The reasoning for this is set forth in detail in the Court's opinion and order dismissing the original third-party complaint. (Dkt. 33 at 3-5.)

the contractual obligations and manner of breach. In its amended third-party complaint, ITI cures this deficiency.

### i. Nature of the Contract

Because the existence of a contract depends on the applicable law, and the applicable law is determined by the nature of the contract, the Court must first examine the basic nature of the alleged contract at issue.

### 1. *Implied or Express Contract*

At law, a contract is either express or implied. ITI claims it "entered into an implied *and* express contract." (Dkt. 37 at 21 (emphasis added).) But "where there is an express contract between parties, there can be no implied contract between them covering the same subject matter dealt with in the express agreement." *Snyder v. Freeman,* 300 N.C. 204, 218 (1980). In this case, the purchase orders serve as the contractual offer that was purportedly accepted through performance. Because the purchase orders are the operative set of terms, there can be no implied contract dealing with the "same subject matter." *See id.* ITI's alleged contracts with GMI are express.

### 2. *Contract for Goods or Services: Predominant Factor*

Whether the alleged contract is for goods or for services dictates whether the UCC will apply. As pleaded, the alleged contract is "for goods *and* services." When an agreement between two parties contains both goods and services, a contract's "predominant factor" or its "purpose, reasonably stated" will determine whether the UCC applies. *Hensley v. Ray's Motor Co.*, 158 N.C. App. 261, 265 (2003). To determine the nature of the contract, a court asks whether a contract "is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved." *Id*. This is sometimes called the "predominant factor test." *Id*. To determine the "thrust" of the contract, courts may look to contract language, the general nature of supplier's business, and the comparative worth of goods versus services. *Id.* at 266.

ITI's initial complaint failed to allege predominantly goods were involved. The Court stated that "the complaint makes no mention of the chemical sales that ITI contends is the 'predominant factor' of the parties' agreement." (Dkt. 33 at 11.) In its amended third-party complaint, ITI still does not sufficiently allege a sales contract. Although ITI now makes references to "chemical goods," the contract pleaded is *predominantly* for services.

7

The amended third-party complaint states that "ITI contracted with GMI for the selection, purchase and application of several chemical additives to be used on the flame-resistant fabric that was ultimately sold to Carhartt." (Dkt. 37 at 3.) The details set forth in the amended complaint reveal the "thrust" of the contract. GMI was a "supplier of . . . finishes," and was given "pre-treated fabric" to be "finished." (*Id.* at 4.) "After the finish process was complete," GMI would then send some of the "finished fabric" to a testing lab and the remainder to Carhartt. (*Id.* at 4-5.) Through these allegations, it is evident that, to the extent chemicals were purchased, they were incidental to the finishing process. Therefore, the contract's "purpose, reasonably stated," under the well-pleaded facts, "is the rendition of service, with goods incidentally involved." *See Hensley*, 158 N.C. App. at 265.

ITI relies heavily on the language in the purchase orders to argue that the underlying contract as one for goods. It points to the words "item," "quantity," and "description" to suggest that the predominant purpose was to purchase goods. (Dkt. 42 at 17.) This is not persuasive. The purchase orders also contain the words "finish" and "Dye Color" within the description, with specification for a "finished weight" and

8

"finished width." (Dkt. 37-3 at 2.) Other description sections indicate to GMI: "DO NOT PUT DWR FINISH ON THIS ROLL" and "this roll is to be slit, dried on the santex and framed." (*Id.* at 3.) Moreover, the fabric itself was not provided by GMI. Rather, "GMI[ ]applied the chemical additives to *ITI's* fabric." (Dkt. 37 at 4 (emphasis added).) The selection of chemicals to be applied to the fabric is not a sale of goods. Nor does the addition of the word "goods" each time ITI pleads chemicals in the amended complaint convert the pleaded contract into one for goods as a matter of law.

This conclusion aligns with many cases, which hold that contracts for the processing of or application of chemicals to goods, where there is no actual exchange of or only incidental use of materials, are predominantly for the provision of services. *E.g.*, *IMI Norgen Inc. v. D&D Tooling & Mfg.*, No. 00 C 5789, 2003 U.S. Dist. LEXIS 10875, at *6, 9-10 (N.D. Ill. June 25, 2003) (The UCC did not apply to a contract with a company to "heat treat . . . lever parts" because the contract was to "service goods" and not to "sell goods."); *Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, No. 14-1095, 2016 U.S. Dist. LEXIS 107945, at *121-25 (E.D.N.Y. Aug. 12, 2016) (Provision of asphalt and construction

9

materials was incidental to the contract to install the flooring, and the UCC did not apply.); *Manes Org., Inc. v. Standard Dyeing & Finishing Co.*, 472 F. Supp. 689, 690 n. 3 (S.D.N.Y. 1979) (finding that the "essence of the agreement" for a "fabric-dyeing-and-finishing contract" was predominantly for services, to which the "change in physical custody of the raw goods . . . was incident to a bailment and not a sale"); *Epstein v. Giannattasio*, 25 Conn. Supp. 109, 112-14 (Conn. Super. Ct. 1963) (dismissing a warranty claim where the complaint alleged a contract "for the purpose of receiving a beauty treatment," which was for services, explaining that the "materials used in the performance of those services were patently incidental to that subject, which was a treatment and not the purchase of an article"). There are no binding North Carolina cases on point. Nor does plaintiff provide additional persuasive authority involving chemical application contracts on which the Court can rely. Therefore, the above cases are instructive.

The closest case that held a contract to apply chemicals was predominantly for goods does not apply to the facts pleaded here. In it, a farmer purchased expensive herbicides from a store and hired the store to apply the chemicals to his fields. *Southern State Coop. v. Townsend*

*Grand & Feed Co.*, 163 B.R. 709, 719 (Bankr. D. Del. 1994). But the "charges for the herbicides themselves were roughly ten times greater than the spraying charge" and the application was conducted only after a transfer of the chemicals to the farmer. *Id.* This case is easily distinguishable. Here, there is no allegation that that the chemicals were first delivered to ITI – they were not – nor an allegation or indication on the purchase orders that the value of the "chemical goods" outweighed the value of the application and curing processes described in the complaint.

Instead, even in the light most favorable to ITI, the well-pleaded facts in the amended third-party complaint do not plausibly set forth a contract predominantly for goods. The amended complaint sets forth the clear nature of the agreement: chemical treatment of fabric. The "change in physical custody of the [fabric]" was incidental, *see Manes Org., Inc.*, 472 F. Supp. at 690 n. 3, and did not constitute a sale. Rather, the application of the correct chemical and proper curing processes is at issue in the amended third-party complaint. For instance, the third-party party complaint outlines machinery and equipment failures in "heating zones" that resulted in "inconsistencies and variations in the chemical

11

and application and curing process." (Dkt. 37 at ¶¶ 33-34.) In total, these allegations reveal that the contract was predominantly for the provision of fabric treatment and processing, which are services.

### ii. *Existence of a Contract*

Nonetheless, ITI has cured the earlier deficiencies related to its breach of contract claim, because it has pleaded sufficient facts to plausibly establish the existence of contracts for services. North Carolina law holds that the "well-settled elements of a valid contract" are "offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." *Se. Caissons, LLC v. Choate Constr. Co.*, 247 N.C. App. 104, 110 (2016). "Acceptance by conduct is a valid acceptance." *Snyder*, 300 N.C. at 218.

The amended third-party complaint sets forth facts related to each of these elements. First, ITI provided offers through purchase orders. True, the mere existence of purchase orders without demonstration of affirmative assent from GMI is not sufficient to allege the existence of a contract. *See Southern Spindle & Flyer Co. v. Milliken & Co.*, 281 S.E.2d 734, 736 (N.C. App. 1981). But ITI pleads that "GMI accepted ITI's contractual offer via GMI's conduct," by selling and applying the finishes

to the fabrics, and shipping the finished product to Carhartt, Inc. and to an outside party for testing. (Dkt. 37 at 22.) Finally, the details of "[w]hether mutual assent is established and whether a contract was intended between the parties are questions for the trier of fact," *see Creech v. Melnik*, 347 N.C. 520, 527 (1998). But taking the allegations in the amended complaint as true, there was mutual assent.

### iii. Manner of Breach

The second prong of a breach of contract claim is the actual manner of "breach of the terms of the contract." *Martinez*, 223 N.C. App. at 432. In its amended complaint, ITI also cures deficiencies regarding the contractual obligations and manner of the alleged breach. In broad terms, ITI alleges that the purchase orders specify the type of flame resistant material to be used and stats that GMI failed to include the necessary additive. GMI disagrees, arguing that there are no allegations in the amended third-party complaint or indications in the purchase orders that the treatment must include a flame-resistant additive.

The allegations are sufficient to allege a breach of contract. ITI states that GMI failed "to sell a durable water repellant finish that included a flame-resistant additive" as indicated on the purchase orders.

13

(Dkt. 37 at 13, 23) ITI specifically alleges that various specifications, such as "F12" or "Protex C modacrylic fibers," are flame resistant fibers that correspond to the need for flame resistant additives in its chemical finishes. (*Id.* at 4, 21-22.) These allegations must be accepted as true at this stage of the case. Therefore, ITI sufficiently pleads the manner of breach.

Purchase order, payment, and delivery is enough to plausibly allege the elements of a contract. And although the exact nature and outlines of the contract are disputed, ITI plausibly alleges a breach of contract for chemical application services. The amended third-party complaint is not futile as to Count VI. For this reason, there was no defect in the Court's decision to allow ITI to amend its third-party complaint to include Count VI.

### b. Breach of Warranty [Counts II-V]

As a threshold matter, warranty claims, whether express or implied, require that a contract be for the sale of goods. *See Everts v. Parkinson*, 147 N.C. App. 315, 330 (2001) ("[A]n express warranty is a promise made by a seller to a buyer which relates to the title, condition or quality of goods." (quoting John N. Hutson, Jr. and Scott A. Miskimon,

14

North Carolina Contract Law § 15-2, at 698 (2001)); *Boudreau v. Baughman*, 322 N.C. 331, 336 (1988) ("[A]ctions for breach of implied warranty are now governed by the Uniform Commercial Code, adopted in North Carolina in 1965 as chapter 25 of the General Statutes." (citations omitted)). GMI argues that all of ITI's warranty claims fail, because the alleged contract was not for goods, but was for services. (Dkt. 39 at 15-16.)

As set forth above, the contract is predominantly for services and therefore all warranty claims, both express and implied, fail as a matter of law. The amendment is therefore futile as to Counts II-V. There was a palpable defect in allowing these counts to go forward and therefore they are dismissed.

### c. Negligence

ITI's claim for negligence is futile under North Carolina's economic loss rule.

> North Carolina's economic loss rule is born out of the principle that "a breach of contract does not give rise to a tort action by the promisee against the promisor." The rule provides "limitations on the recovery in tort when a contract exists between the parties that defines the standard of conduct and which the courts believe should set the measure of recovery."

15

*Provectus Biopharmaceuticals, Inc. v. RSM US LLP*, No. 17 CVS 10396, 2018 NCBC LEXIS 101, at *51-52 (N.C. Super. Ct. September 28, 2018) (quoting *N.C. State Ports Auth. v. Lloyd A. Fry Roofing, Co.*, 294 N.C. 73, 81 (1978); *Akzo Nobel Coatings, Inc. v. Rogers*, No. 11 CVS 3013, 2011 NCBC LEXIS 42, at *47-48 (N.C. Super. Ct. Nov. 3, 2011)). "To maintain a tort claim for conduct also alleged to be a breach of contract, the plaintiff must show a duty owed by the defendant separate and distinct from any duty owed under a contract." *Id.* (quotations and citations omitted). ITI does not plead any tort claim outside ITI's breach of contract claim. Rather, all of its claims lie in the repeated allegation that GMI "agreed to provide ITI with goods and services that complied with the purchase orders." These allegations serve as the basis of ITI's breach of contract claim, and therefore cannot serve as the basis of an independent negligence claim. For this reason, the proposed amendments related to the negligence claim contained in Count VII are futile. The Court committed a palpable defect allowing the amended third-party complaint to go forward with respect to this claim and it is therefore dismissed.

### d. Indemnity Implied in Law

Indemnity implied-in-law is "more an equitable remedy than an action in and of itself," *Kaleel Builders*, 161 N.C. App. at 41, and is a "legal fiction used to avoid unfairness." *Carl v. State*, 192 N.C. App. 544, 558 (2008) (quoting *Ne. Solite Corp.*, 102 F. Supp. 2d at 641). "For indemnification implied-in-law . . . North Carolina law requires there be an underlying injury sounding in tort." *Kaleel Builders*, 161 N.C. App. at 41; *see also CBP Res., Inc. v. SGS Control Servs., Inc.*, 394 F. Supp. 2d 733, 741 (M.D.N.C. 2005) ("Defendant is correct that both implied-in-law indemnity and contribution require an underlying tort injury.").

When "indemnity implied-in-law arises from an underlying tort . . . a passive tort-feasor pays the judgment owed by an active tort-feasor to the injured third-party." *Kaleel Builders*, 161 N.C. App. at 39. Often described as "primary and secondary liability," an active tortfeasor is required to pay a judgment on behalf of a passive tortfeasor when:

> (1) they are jointly and severally liable to the plaintiff; and (2) either (a) one has been passively negligent but is exposed to liability through the active negligence of the other or (b) one alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former.

*CBP Res., Inc. v. SGS Control Servs., Inc.*, 394 F. Supp. 2d 733, 746 (M.D.N.C. 2005) (quoting *Edwards v. Hamill*, 262 N.C. 528, 531 (1964)).

17

ITI's indemnity-in-law claim fails because it no longer has an underlying injury sounding in tort. The North Carolina Court of Appeals explains why a contractual dispute, alone, cannot serve as the basis for indemnity implied-in-law:

> Because [the defendants] are accountable in their contract with [plaintiff], [plaintiff] does not have a claim in tort against [defendants], and therefore, 'the parties do not fit the active-passive tort-feasor framework required to support an equitable right to indemnity implied-in-law[.]'

*Frye Reg'l Med. Ctr. v. Hostetter & Keach, Inc.*, No. COA13-313, 2013 N.C. App. LEXIS 1300, at *17 (2013) (quoting *Kaleel*, 161 N.C. App. at 47). Here, ITI alleges a contractual dispute and provides no other plausible injury upon which to base its indemnity implied-in-law claim. Therefore, the amended third-party is futile and the Court committed error allowing this claim to be amended. Count VIII is dismissed.

## IV. Conclusion

ITI's amended third-party complaint cures defects contained in its primary claim: breach of contract. However, the other counts fail to set forth plausible claims. Because many of the amendments permitted in the Court's initial grant of leave were, in fact, futile, GMI has demonstrated palpable defect with respect to the remaining counts.

18

GMI's motion for reconsideration is hereby GRANTED as to Counts I, II, III, IV, V, VII, and VIII. The Motion is DENIED as to Count VI.

IT IS SO ORDERED.

Dated: December 4, 2018　　　　s/Judith E. Levy
　　Ann Arbor, Michigan　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 4, 2018.

　　　　　　　　　　　　　　　s/Shawna Burns
　　　　　　　　　　　　　　　SHAWNA BURNS
　　　　　　　　　　　　　　　Case Manager