UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARHARTT, INC.,

    Plaintiff,                               No. 17-13604

v.                                     District Judge Judith E. Levy
                                        Magistrate Judge R. Steven Whalen

INNOVATIVE TEXTILES, INC.,

    Defendant / Third Party Plaintiff,

v.

GENTRY MILLS, INC.,

    Third Party Defendant.
_____/

**OPINION AND ORDER**

Before the Court are Defendant / Third Party Plaintiff Innovative Textiles, Inc.'s ("ITI's") Motion to Compel Discovery Regarding Communications Exchanged Between and Information Considered by Carhartt's Four-Person "Product Notification" Team [ECF No. 98] and its Amended Motion to Compel [ECF No. 109].[1] Following an *in camera* review of the documents in question, and for the reasons discussed below, the

---

[1] The Amended Motion contains a certified copy of Joe Don Long's deposition transcript, which was not available when the initial motion was filed. Otherwise, the two motions are identical.

-1-

motions will be DENIED.

## I. BACKGROUND

Carhartt is a Dearborn, Michigan based clothing company that markets a line of flame-resistant garments. Beginning in 2009, ITI supplied Carhartt with flame-resistant fabric. Carhartt alleges that around June of 2016, its internal testing revealed that ITI's fabrics "did not satisfy the standards they were required to satisfy...and did not live up to the representations that [it] had made about the fabrics." *Complaint*, ECF No. 1, PageID.11. As a result, Carhartt recalled products containing the allegedly non-conforming (i.e., defective) fabric, and seeks damages associated with the recall.

At issue in these motions is Carhartt's decision to recall products containing the allegedly defective fabric, and internal communications among Carhartt personnel preceding that decision. Ultimately, four people participated in the decision to recall products: William Hardy, Jeffrey Hicks, Joe Don Long, and Anna Inch. Ms. Inch was Carhartt's in-house counsel. Mr. Hardy, a senior vice-president, testified as follows at his deposition:

> Q: Okay. Who at Carhartt made the final decision to issue the product notification?
>
> A: The final decision was made by a collective group of us, there was three or four primary people involved in that....Yeah, so it was a collective decision. Jeff, amongst myself and our Linda Hubbard and Joe Don Long and our inside counsel, we had extensive meetings together, and spent a lot of time evaluating the information that we had.

> Q: Was everyone in that group in agreement on the decision to issue the product notification?
>
> A: Yes, sir.
>
> Q: Okay. So there wasn't one final person that made the decision?
>
> A: No, we collectively all came to the agreement, what we needed to do.

*Deposition of William Hardy*, ITI' Exhibit 3, ECF No. 109-4, PageID.5023-5024; Carhartt Exhibit 2, ECF 126-3, PageID.5508.

Joe Don Long, formerly Carhartt's Director of Quality for Raw Materials testified similarly that four individuals participated in the ultimate decision to issue the product notification:

> Q: Sure, William Hardy indicated to me that there were four people who made the decision to issue the product notification. There were four decision-makers, essentially. Do you agree with that statement?
>
> A: Yes.
>
> Q: Okay. And he also told me that those four decision-makers were himself, as one, you, as number two, and these are in no particular order, Linda Hubbard as the third person and I referred to counsel as the fourth person, who I assume that he meant Anna Inch. Does that sound accurate based on your recollection?
>
> A: Yes. *Deposition of Joe Don Long*, ITI's Exhibit 4, ECF No. 109-5, PageID.5033-5034.

Following Carhartt's decision, it issued a Product Notification Letter to its

customers (ITI's Exhibit 1, ECF No. 109-2, PageID.109) and a press release (ITI's Exhibit 2, ECF No. 109-3, PageID.5020), informing both its customers and the public of the problems with nine specific flame-resistant sweatshirt styles. The Product Notification Letter stated, "We ask that you stop sale of the products listed above and return all inventory, at our cost, to Carhartt for a refund or alternative product."

During discovery, ITI requested the production of communications related to the recall/product notification. At issue in this motion are 65 specific communications to which Carhartt claimed attorney-client privilege. Carhartt has produced those communications (email chains) to the Court for an *in camera* review.[2]

## II. DISCUSSION

In *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir.1999), cert. denied, 525 U.S. 820 (1998), the Sixth Circuit described the contours of the attorney-client privilege as follows: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence

---

[2] Carhartt's privilege log was previously filed as part of ITI's motion to compel a more detailed privilege log [ECF No. 64], which the Court denied on October 24, 2019 [ECF No. 155]. The 65 documents at issue in the present motion are: Carhartt Priv. Log Nos. 00001, 00002, 00003, 00007, 00055, 00056, 00057, 00061, 00062, 00063, 00087, 00143, 00145, 00147, 00148, 00149, 00150, 00152, 00198, 00207, 00208, 00212, 00215, 00219, 00220, 00229, 00235, 00236, 00237, 00239, 00240, 00246, 00252, 00260, 00303, 00343, 00392, 00407, 00414, 00425, 00429, 00439, 00440, 00476, 00616, 00622 00626, 00631, 00632, 00697, 00807, 00808, 00809, 00810, 00811, 00812, 00814, 01105, 01115 01116, 01118, 01119, 01152, and 01162. *Carhartt's Revised Privilege Log*, ECF No. 75-5, PageID.3426-3559.

(5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." (Emphasis added). The attorney-client privilege is narrowly construed, because it "reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir.1997); *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir.1996). Furthermore, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." [3]

The emails to which Carhartt claims privilege were to and from its in-house counsel, Anna Inch, and discussed Ms. Inch's input. ITI argues that because Ms. Inch was a member of a four-person team that made a collective decision to issue a recall, she was not acting in her role as an attorney, but rather in the capacity of a corporate official participating in a business decision.

"Where a person who happens to be an attorney is not acting in that capacity, the privilege does not attach," and "[c]ommunications between an attorney and client which relate to business, rather than legal matters, do not fall within the protection of the attorney-client privilege." *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 2006 WL 1851018, at *2 (E.D. Mich. July 5, 2006). However, separating an attorney's role in a business decision from his or her role as a legal advisor is not always a simple matter.

---

[3] ITI' argument that the description of the privilege in Carhartt's privilege log is conclusory and unsubstantiated was rejected in the previous order denying ITI's motion to compel a more detailed privilege log [ECF No. 155].

"'[L]egal and business considerations may frequently be inextricably intertwined. This is inevitable when legal advice is rendered in the context of commercial transactions or in the operations of a business in a corporate setting. The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege.'" *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 685–86 (W.D. Mich. 1996)(quoting *Coleman v. American Broadcasting Co.*, 106 F.R.D. 201, 206 (D.C.1985)). *See also In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. 91, 97 (S.D.N.Y.1993) (the distinction between legal and business concerns is necessarily blurred in a corporate litigation context).

Thus, the mere fact that Ms. Inch, Carhartt's in-house counsel, was part of a decision-making collective that included three non-lawyer corporate officers is not dispositive. The more important question is whether the *legal* nature of the advice or communication has primacy over its *business* character. "When an attorney acts in both a legal and a business capacity, the resulting communications are only privileged if the legal aspect predominates." *Ganley v. Mazda N. Am. Operations*, 2007 WL 9706988, at *5 (N.D. Ohio 2007)(*citing Boca Invest. Partnership v. United States*, 31 F. Supp. 2d 9, 11–12 (D.D.C.1998)). Moreover, "[a]s legal and business issues are often 'inextricably intertwined,' in determining whether advice is predominately legal or business in nature, courts should resolve doubts in favor of the privilege." *Id*. (citing *U.S. Postal Serv. v. Phelps Dodge Refining Co.*, 852 F. Supp. 156, 160 n.2 (E.D.N.Y. 1994)).

If an attorney serves a non-legal function that could as well be performed by a non-lawyer, and acts in the ordinary course of business, his or her communications in that capacity would likely not be protected by the attorney-client privilege. For example, in *Burke v. Cumulus Media, Inc.*, 2017 WL 2628192, at *2 (E.D. Mich. Mar. 16, 2017), an attorney also had a position as Senior Vice President of Human Resources Operations, and the advice sought from her related to ordinary human resources issues, not legal issues. Rejecting a claim of privilege, the Court found that "[t]his type of advice is not exclusive to legal authorities but rather can be given by non-lawyers as well." *Id*. *See also Flagstar Bank v. Fed. Ins. Co.*, 2006 WL 6651780, at *4 (E.D. Mich. Aug. 21, 2006) ("Communications by attorneys acting as insurance claims investigators, rather than as attorneys, are not protected by the attorney client privilege"); *Michigan First Credit Union v. Cumis Ins. Soc., Inc*., 2006 WL 1851018, at *2 ("Where a person who happens to be an attorney is not acting in that capacity, the privilege does not attach.").

In this case, attorney Inch's communications are of a different ilk. Unlike the attorney in *Burke*, Inch did not have a dual business/legal function at Carhartt; she was the in-house counsel, not a corporate manager. Moreover, the recall/product notification was a singular event occasioned by Carhartt's determination that the flame-resistant fabrics supplied by ITI were defective, not a routine activity that was done in the regular course of business. The decision to recall and the scope of the recall necessarily involved legal questions, including potential liability to customers and claims against ITI, the

supplier of the fabric. These, not marketing or other business considerations, were Ms. Inch's area of expertise. Because her advice and communications were predominately legal, they are protected by the attorney-client privilege, notwithstanding that the other members of the decision-making quartet may have factored in business-related considerations.[4] *Ganley v. Mazda N. Am. Operations*.

Contrary to ITI's argument, the deposition testimony of Messrs. Hardy and Long, two other members of the four-person collective, did not serve to waive the attorney-client privilege as to Ms. Inch. They merely testified, in general terms, that in considering the recall, they looked at and analyzed all the information they had. As they did not disclose the content of any specific communications to or from Ms. Inch, there can be no waiver, express or implied.[5]

Turning to the 65 emails that Carhartt asserts are privileged, I have conducted an *in camera* review, and find that they in fact meet the eight-part test of *Reed v. Baxter*, and

---

[4] In *Flagstar Bank*, 2006 WL 6651780, at *5, the Court, addressing the issue of work product privilege, stated, "In determining whether a document was prepared "in anticipation of litigation" Courts must ask first whether litigation was a real and substantial possibility and whether the particular document was generated because of the threat of litigation, and not for ordinary business purposes." The same reasoning applies to attorney-client privilege. The salient inquiry is whether the material is produced "in the ordinary course of business," or whether it constitutes legal advice on an issue that is not "ordinary," for example, decisions that carry legal consequences, such as the one-off recall of a defective product.

[5] "[I]mplied waivers of the attorney-client privilege are narrowly construed and generally found where a plaintiff asserts claims or defenses that put his attorney's advice directly at issue in the litigation." *Tocco v. Richman Greer Prof'l Ass'n*, 2012 WL 1166620, at *2 (E.D. Mich. 2012)(citing *In re Lott*, 424 F.3d 446, 453-55 (6th Cir.2005)).

are therefore shielded from disclosure. Carhartt has met its burden of establishing attorney-client privilege.

## III. CONCLUSION

ITI's Motion to Compel Discovery Regarding Communications Exchanged Between and Information Considered by Carhartt's Four-Person "Product Notification" Team [ECF No. 98] and its Amended Motion to Compel [ECF No. 109] are DENIED.

IT IS SO ORDERED.

Dated: October 28, 2019		s/R. Steven Whalen
					R. STEVEN WHALEN
					UNITED STATES MAGISTRATE JUDGE


## **CERTIFICATE OF SERVICE**

I hereby certify on October 28, 2019 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants October 28, 2019.

					s/Carolyn M. Ciesla
					Case Manager for the
					Honorable R. Steven Whalen