# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Carhartt, Inc.,

                Plaintiff,      Case No. 17-13604

v.                                Judith E. Levy
                                United States District Judge
Innovative Textiles, Inc., and
Innovative Textiles, LLC,     Mag. Judge R. Steven Whalen

                Defendants/
                Third-Party
                Plaintiffs,

v.

Gentry Mills, Inc.,

                Third-Party
                Defendant.

_____/

# OPINION AND ORDER GRANTING IN PART INNOVATIVE TEXTILES, LLC'S MOTION FOR SUMMARY JUDGMENT [141] AND DENYING IN PART CARHARTT, INC.'S MOTION FOR <u>SUMMARY JUDGMENT [151]</u>

      Carhartt Inc. sued Innovative Textiles, Inc. and Innovative Textiles, LLC alleging seven counts: (1) breach of contract, (2) breach of express and implied warranties, (3) negligence, (4) fraud, (5) silent fraud, (6) innocent misrepresentation, (7) false advertising under the Lanham

Act, and (8) successor liability against Innovative Textiles, LLC.[1] (ECF No. 82.) Innovative's summary judgment motion is granted as to Carhartt's negligence claim, fraud claims, and Lanham Act claim. Carhartt's cross motion for summary judgment is denied as to its negligence claim for the reasons set forth below.[2]

## I. Background

This case involves fabric that Carhartt uses to make garments that it markets as flame-resistant. (ECF No. 151, PageID.68.) Innovative develops flame-resistant fabrics that contain modacrylic fibers, which are acrylic fibers with flame-resistant properties. (ECF No. 141, PageID.5732–33.) Carhartt contracted with Innovative for development of a flame-resistant fleece fabric known as Style 2015, which is the fabric at issue in this case. (ECF No. 151, PageID.6196.)

---

[1] Innovative Textiles, Inc. transferred its assets to Innovative Textiles, LLC in 2015. (ECF No. 157, PageID.6839.) Innovative asserts that, "the distinction between these companies is not relevant to the issues addressed in this motion." (*Id.*) Accordingly, both Innovative Textiles, Inc. and Innovative Textiles, LLC will be referred to as "Innovative."

[2] Carhartt and Innovative's cross-summary judgment motions on Carhartt's breach of contract and breach of warranty claims, and Gentry Mills' summary judgment motion on Innovative's breach of contract claim, will be addressed in a separate opinion and order. (ECF Nos. 141, 148, 151.)

Innovative does not manufacture the fabric it designs. (ECF No. 141, PageID.5733.) Rather, it hires knitters to knit yarn into fabric and finishers to finish the fabric. (*Id*.) Fabric "finishing" in this case includes the process of taking the fabric from the knitter, dying the fabric, applying additional chemicals such as a product known as "durable water repellant," and curing those chemicals. (ECF No. 148, PageID.5962-63, 5966–67.) For Style 2015, Innovative contracted with Gentry Mills to perform the finishing. (ECF No. 141, PageID.5733.)

Carhartt relied on Innovative to conduct flame-resistance testing before shipping finished Style 2015 fabric to Carhartt.[3] (ECF No. 141-11, PageID.5817.) Innovative had Gentry Mills send a portion of the finished fabric for testing to a third-party lab called Diversified Testing before shipping the fabric to Carhartt. (ECF No. 141 PageID.5734.) Beginning in 2012, Innovative also obtained certification from Underwriters Laboratories, known as UL, which conducted extensive testing to satisfy

---

[3] Innovative asserts that Carhartt always retained the right and ability to conduct its own tests for flame-resistance once it received finished Style 2015 fabric. (ECF No. 141.) Carhartt disputes that it would have "caught the latent defect" even if it had conducted the tests at the time it received the fabric. (ECF No. 167, PageID.7302.)

the National Fire Protection Association Standard 2112. (ECF No.141, PageID.5744; ECF No. 167, PageID.7302–03.)

On or around June 2016, however, Carhartt tested finished pieces of Style 2015 and discovered the pieces did not meet its specifications. (ECF No. 141-11, PageID.5818.) Carhartt notified Innovative, which then tested samples of Style 2015 fabrics dating back to 2014, and found that the samples did not pass. (ECF No. 167, PageID.7305.) Carhartt issued a "voluntary product notification," essentially a voluntary recall, of the garments that had been made from Style 2015. (ECF No.141 PageID.5736.) No one reported any injuries from the products made from Style 2015. (*Id.*)

During the parties' 2016 investigation of the root cause for the testing failures, Carhartt contends it discovered that in approximately 2013, Innovative switched from a modacrylic fiber called Protex-C to a different fiber called F-12. (ECF No.167, PageID.7303.) Carhartt attributes the fire resistance test failures to Innovative's fiber change. (*Id.* at 7304.) It alleges that Innovative breached the parties' contract by switching fabrics and failing to disclose the change to Carhartt. (*Id.*)

Innovative disagrees and alleges that it "occasionally mentioned" the fabric switch. (ECF No. 141, PageID.5733.) Innovative contends that its contact with Carhartt required only that it use modacrylic fiber, "but did not specify a particular kind of modacrylic fiber." (*Id*.) Innovative also argues that there "was no difference" between the new and the old fabric. (ECF No. 141, PageID.5736.)

Carhartt additionally argues that, unbeknownst to it, Style 2015 failed its annual UL certification testing in 2014 and "obtained numerous test results showing failures" in 2015 and 2016, in breach of their contract. (ECF No.167, PageID.7304.) Innovative argues that Carhartt's specifications "do[] not require Innovative Textiles to guarantee that its products will comply with Carhartt's specifications in perpetuity." (ECF No. 141, PageID.5744.) Innovative also claims that the fabric did "satisfy those specifications when originally delivered to Carhartt," and that the failures well after-the-fact were due to aging, improper storage, and other factors not attributable to Innovative. (*Id*.)

Innovative further argues that the testing failures were the fault of Gentry Mills' improper finishing. Specifically, Innovative argues that Gentry Mills' application of durable water repellant, improper curing,

5

and machinery problems caused Style 2015 to fail the flammability tests. (ECF No. 157, PageID.6839–44.)

Gentry Mills argues that Innovative selected the durable water repellant chemical composition and controlled the finishing specifications, which Gentry Mills followed exactly. (ECF No. 148, PageID.5966–67.) It also argues that it never knew the test failure results, nor had any notice of performance issues, until 2016 because lab results went directly to Innovative, and not to Gentry Mills. (*Id.*)

Carhartt sued Innovative in November 2017. (ECF No. 1.) Innovative then brought a third-party complaint against Gentry Mills. (ECF No. 8.) The only remaining claim against Gentry Mills is Innovative's breach of contract claim. (ECF No. 53.) For the reasons set forth below, Innovative's motion for summary judgment is granted in part (ECF No. 141) and Carhartt's motion for summary judgment is denied in part.

## II. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not

grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III. Analysis

### A. Negligence and Fraud Claims

Counts IV through VII in Carhartt's complaint involve negligence and fraud claims. (ECF No. 82.) Both Carhartt and Innovative cross-move for summary judgment on these claims. For the reasons set forth below, Innovative's motion for summary judgment is granted and Carhartt's motion for summary judgment is denied as to these claims.

The parties do not dispute that Michigan law applies to Carhartt's claims against Innovative.[4] The Michigan Supreme Court adopted the economic loss doctrine, which bars recovery for tort claims brought by a

---

[4] North Carolina law governs Innovative's breach of contract claim against Gentry Mills, but is not applicable to the claims addressed here.

7

plaintiff seeking relief for solely economic loss arising out of an alleged breach of contract. *See Neibarger v. Universal Coops., Inc.*, 439 Mich. 512, 515–17 (1992). In *Neibarger*, the Michigan Supreme Court explained:

> The economic loss doctrine, simply stated, provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

*Id*. at 521–22 (internal citations omitted); *see also Bev Smith, Inc. v. Atwell*, 301 Mich. App. 670, 688 (2013) (holding that the plaintiff's fraud-in-the-inducement, fraudulent misrepresentation, and silent fraud claims were barred by the economic loss doctrine because they "essentially reiterated the allegations set forth in plaintiff's breach of contract claim."); *and see General Motors Corp. v. Alumi-Bunk, Inc.*, 482 Mich. 1080, 1080 (2008) (Young, J., concurring) ("[T]here is no way to characterize these identical allegations as separate claims for breach of contract and fraudulent inducement.").

### 1. *Negligence*

8

With respect to Carhartt's negligence claim, Innovative argues that the allegations "concern the quality of Innovative Textiles' product. They focus on Carhartt's frustrated expectations as a buyer." (ECF No. 141, PageID.5749.) Innovative argues that the duties and alleged losses arise out of the parties' contract. (*Id*.) Consequently, Carhartt's claims are barred under the economic loss doctrine. (*Id*.)

In response, Carhartt argues that its negligence claim should survive summary judgment because Innovative breached certain non-contractual duties. (ECF No. 167, PageID.7315.) Those duties were: "(1) a duty to test Style 2015 properly, and (2) a duty to disclose material changes to Style 2015 and testing failures at UL. A general duty of care encompasses both of these duties." (*Id*.)

Carhartt also argues that summary judgment should be granted in its favor on this claim. (ECF No. 151, PageID.6214.) It argues, in essence, that the duties Innovative breached arose out of "industry standards and the 2112 standard itself," which were outside of the parties' contract. (*Id.* at 6214–15.)

Carhartt cites to two non-binding Michigan court of appeals cases in support of its motion. The first, *Challenge Mach. Co. v. Mattison Mach.*

9

*Works*, 138 Mich. App. 15, 26–27 (1984) involved parties to a contract for the purchase of a grinder machine. The plaintiff brought both breach of contract and warranty claims as well as a claim for negligent installation of the machine against the defendant. The court found that claims related to the machine's installation were sufficiently "separate from its breach of warranty claims," such that the plaintiff could maintain a separate negligence claim against the defendant. "Negligent performance of an undertaking, even though grounded upon a contractual relationship, may constitute an actionable tort as well as a breach of contract. *Id.* at 27 (internal citations omitted.)

Here, the alleged negligent performance Carhartt claims is not separate from its other claims; indeed, Carhartt's negligence theories relate to the terms of the contract between the parties and are "identical allegations." *General Motors Corp.*, 482 Mich. 1080 (Young, J., concurring). Moreover, *Challenge* predates *Neibarger*, and did not include the analysis of the economic loss doctrine that *Neibarger* sets forth.

The second case Carhartt cites, *Conant v. State Farm Fire & Cas. Co.*, No. 260524, 2006 WL 1411216 (Mich. Ct. App. May 23, 2006), is an

unpublished Michigan court of appeals decision that presents an entirely different set of facts and interests than are present here and is inapplicable.[5] To rely on these cases would be, as Innovative aptly argues, "out-of-step with current Michigan Supreme Court jurisprudence." (ECF No. 162, PageID.7058–59.)

Carhartt and Innovative's contract contains flammability and fiber content specifications. (ECF 141-5, PageID.5792.) These are the very terms that Carhartt argues were breached; but because they are written into the terms of the contract, they cannot form the basis for a tort claim. Accordingly, the economic loss doctrine bars Carhartt's negligence claim.

In conclusion, Innovative's motion for summary judgment on Carhartt's negligence count is granted and Carhartt's motion for summary judgment on this claim is denied. The negligence claim is dismissed.

---

[5] In *Conant*, the court found a non-contractual tortious duty could exist where an insurance company committed "malfeasance" and "active[] negligen[ce]" in carrying out its duties to inspect claims. *Id*. The court of appeals found that as a matter of policy, to rule otherwise could "grant insurers unfettered ability, when taken to its logical extent, to act negligently, wantonly, and intentionally and conceivably destroy a home or wreak havoc all in the name of conducting an investigation on a claim, without being subject to liability simply because a contract existed between the insured and the insurer." *Id*. *4. This case bears no resemblance to *Conant*.

### *2. Fraud*

Next, Innovative moves for summary judgment on Carhartt's fraud claims.[6] (ECF Nos. 141, 151.) Again, Innovative argues that the economic loss doctrine applies because Carhartt's fraud theories concern "the quality and characteristics" of the product at issue. (ECF No. 141, PageID.5750.) For the same reasons set forth above regarding Carhartt's negligence claim, the economic loss doctrine applies and these claims must be dismissed.

Carhartt's fraud theories reflect "a concern about the quality expected by the buyer and promised by the seller, which is the essence of a warranty action under the UCC." *Huron Tool and Eng'g Co. v. Precision Consulting Servs, Inc.*, 209 Mich. App. 365, 369–70 (1995) (*citing Neibarger*, 439 Mich. at 531.) Carhartt's fraud claims are grounded in contract, and therefore the economic loss doctrine applies to bar these

---

[6] Carhartt does not cross-move for summary judgment against Innovative on its fraud counts. (ECF No. 151.) The Court acknowledges that Carhartt's response to Innovative's summary judgment motion argues that "it is the party entitled to summary judgment," rather than Innovative, on this issue. (ECF No. 167, PageID.7321.) The Court declines to consider this single sentence as a properly presented motion, particularly where Carhartt did not include this argument in its motion for summary judgment. (ECF No. 151.) *See Desparios v. Perrysberg Exempted Vill. Sch. Dist.*, 455 Fed. App'x 659, 666 (6th Cir. 2012) (*citing Tucker v. Union of Needletrades, Indus. and Textile Emp.*, 407 F.3d 784, 787–88 (6th Cir. 2005)).

claims. *See Bev Smith*, 301 Mich. App. at 688 (holding that the plaintiff's fraud claims were barred by the economic loss doctrine).

Carhartt also argues that a fraud-in-the-inducement theory of liability applies. ECF No. 167, PageID.7318–21.) Fraud-in-the-inducement has been recognized by the Michigan court of appeals as an exception to the economic loss doctrine. *See Huron Tool*, 209 Mich. App. at 370–71.

Fraud-in-the-inducement "addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *Id.* at 371 (*citing Williams Electric Co. Inc. v. Honeywell, Inc.*, 772 F.Supp. 11225, 123738 (N.D. Fla., 1991).)

To establish a claim for fraudulent inducement under Michigan law, Carhartt must allege that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 274 Mich. App. 239, 243 (2006) (citations omitted).

Those allegations must be supported by evidence to overcome a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (stating that at the summary judgment stage, the judge "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict— 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'")

Carhartt argues that Innovative's representations "induced Carhartt to continuously and repeatedly issue purchase orders for Style 2015 fabric." (ECF No. 167, PageID.7320.) However, beyond that, Carhartt does not cite to any evidence regarding Innovative's alleged misrepresentation, such as when the misrepresentation or misrepresentations occurred, who made them, whether the individual or individuals making them had knowledge of their falsity or were reckless in making them, or any other facts that would support its claim.

Accordingly, the fraud-in-the-inducement exception to the economic loss doctrine does not apply. Innovative's motion for summary judgment is granted and Carhartt's fraud and fraud-in-the-inducement claims are dismissed.

B.  **Lanham Act Claim**

Innovative's motion for summary judgment on Carhartt's Lanham Act claim is also granted. The Lanham Act allows a party damaged by false commercial advertising to bring a civil action. 11 U.S.C. §1125(a). Section 1125(a) creates two distinct bases for liability: false association, and false advertising. *Id*. Here, Carhartt alleged false advertising. (ECF No. 82.) The false advertising provision of the Lanham Act provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act.

15

15 U.S.C. §1125(a).

The analytical framework for deciding a party's standing to maintain a Lanham Act false advertising claim must start with whether the plaintiff's "interests fall within the zone of interests protected by the law invoked." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 574 U.S. 118, 129 (2014) (internal citations omitted). Although the zone of interests test is "not especially demanding," *id.*, it must still "allege an injury to a commercial interest in reputation or sales." *Id*. Moreover, it excludes certain types of claims:

> A customer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act—a conclusion reached by every Circuit to consider the question. Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis.

*Id.* (internal citations omitted).

Innovative argues that Carhartt's Lanham Act claim fails as a matter of law because (1) Carhartt is not within the "zone of interests" protected under the Lanham Act because it does not allege an injury to a commercial interest in its reputation or sales; (2) there is no evidence of an injury "flowing directly" from deceptive advertising; and (3) Carhartt

never identifies the specific advertising at issue. (ECF No. 141, PageID.5751–55.)

In response, Carhartt points to its allegation that it "clearly alleged an 'injury to a commercial interest in reputation [and] sales.'" (ECF No. 167, PageID.7322.) Carhartt asserts that Innovative made "numerous false and misleading statements about its fabric [meeting safety standards] in its advertisements and on its website . . .," which influenced Carhartt's purchasing decisions. (ECF No. 82, PageID.3655.)

Carhartt also argues that it "invested substantial resources in the development of the garment line, forgoing development of other development [sic] in favor of utilizing Style 2015 fabric and made representations to customers regarding the properties and quality of the products containing ITI's fabric." (*Id.* at PageID.7322–23.) Carhartt does not, however, submit any documentary or other evidence in support of this argument. Without more, Carhartt's arguments are exactly the types of claims excluded under *Lexmark*, which requires more than an allegation that a customer was "hoodwinked into purchasing a disappointing product." *Lexmark*, 574 U.S. at 129.

Carhartt's reliance on these allegations are not enough to overcome Innovative's motion for summary judgment on its Lanham Act claims. Carhartt has not demonstrated that there is an issue of material fact appropriate for trial. Accordingly, Innovative's motion for summary judgment as to Carhartt's Lanham Act claim is granted and this claim is dismissed.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS in part Innovative's motion for summary judgment (ECF No. 141) and DENIES in part Carhartt's motion for summary judgment (ECF No. 151).

IT IS SO ORDERED.

Dated: February 24, 2020      s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                                        United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 24, 2020.

                                         s/William Barkholz
                                         WILLIAM BARKHOLZ
                                         Case Manager