UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Carhartt, Inc.,

          Plaintiff,         Case No. 17-13604

v.                                     Judith E. Levy
                                     United States District Judge

Innovative Textiles, Inc., and
Innovative Textiles, LLC,     Mag. Judge R. Steven Whalen

          Defendants/
          Third-Party
          Plaintiffs,

v.

Gentry Mills, Inc.,

          Third-Party
          Defendant.

_____/

**OPINION AND ORDER GRANTING GENTRY MILLS INC.'S
MOTION FOR SUMMARY JUDGMENT [148]**

Before the Court is third-party Defendant Gentry Mills Inc.'s motion for summary judgment against third-party Plaintiffs Innovative Textiles, Inc., and Innovative Textiles, LLC[1] (collectively, "Innovative").

---

[1] Innovative Textiles, Inc. transferred its assets to Innovative Textiles, LLC in 2015. In Innovative's own words, "the distinction between these companies is not

On February 27, 2020, the Court heard oral argument on this motion. For the reasons set forth below, Gentry Mills' motion for summary judgment is granted.

## I. Background

### A. Factual Background

This case arises out of Innovative's contractual relationship with Plaintiff Carhartt, Inc. Between 2014 and 2016, Carhartt contracted with Innovative for the development of a flame-resistant fleece fabric known as Style 2015, which is the fabric at issue in this case. (ECF No. 148, PageID.5962.) Carhartt used Style 2015 fabric to make garments for workers in potentially flammable conditions, such as workers in the electrical, oil, and petrochemical industries. (ECF No. 1, PageID.3.) When Carhartt discovered that Style 2015 fabric failed certain flame resistance testing, this lawsuit and Innovative's third-party lawsuit against Gentry Mills followed.

---

relevant to the issues addressed in this motion." (ECF No. 157, PageID.6839.) Accordingly, both Innovative Textiles, Inc. and Innovative Textiles, LLC will be referred to as "Innovative."

Although Carhartt contracted with Innovative to develop Style 2015 fabric, Innovative does not manufacture the fabric. (ECF No. 148, PageID.5965–66.) Rather, it hires knitters to knit yarn into fabric and finishers to finish the fabric. (*Id.*) For Style 2015, Innovative contracted with Gentry Mills to perform the finishing. (ECF No. 157, PageID.6840.)

Innovative describes Gentry Mills' fabric finishing process as follows. First, the fabric arrived at Gentry Mills' facility in a tube. (*Id.* at 6840–41.) Then it was scoured to remove knitting oils and contaminants. (*Id.*) Gentry Mills formulated its own dyes, and used them to dye the fabric. (*Id.*) Then, Gentry Mills applied an antimicrobial finish. (*Id.*) Next, the fabric tube was cut and dried through a tenter frame. A tenter frame is, as Innovative describes it, essentially a "giant oven" used for drying and curing. (*Id.* at 6841.) Gentry Mills' tenter frame used pre-set and controlled temperature zones that the fabric passed through. (*Id.* at 6840–41.) After being run through the tenter frame, the fabric was "napped" to give it a "fleece face." (*Id.*) Gentry Mills then applied additional chemicals to the fabric and ran it through the tenter frame again to cure and dry it. Finally, Gentry Mills compacted, cut, and bagged the fabric for shipping. (*Id.*)

Carhartt relied on Innovative to conduct flame-resistance testing before the finished Style 2015 fabric was shipped to Carhartt.[2] (ECF No. 148, PageID.5967.) To achieve this requirement, Innovative directed Gentry Mills to send a portion of the finished fabric to a third-party lab called Diversified Testing before shipping the fabric to Carhartt.[3] (*Id.*)

Innovative contends that beginning sometime in approximately 2011, Carhartt requested that durable water repellant ("DWR") be added to its flame-resistant fabrics, including Style 2015. (ECF No. 157, PageID.6843.) Innovative requested that Gentry Mills obtain samples and conduct trials of DWR applications in order to meet Carhartt's demand. (*Id.*) Gentry Mills applied DWR to all Style 2015 fabric. (*Id.*) However, DWR applications can increase fabric's flammability. (ECF No. 157-7, PageID.6897–98.)

---

[2] Innovative and Carhartt dispute certain facts related to Carhartt's ability to conduct its own product testing, and dispute whether the defects were latent. (*See* ECF Nos. 141, 167.) However, the disputes between Innovative and Carhartt will be addressed in a separate opinion and order and will not be set forth here unless necessary to address Gentry Mills' summary judgment motion.

[3] Beginning in 2012, Innovative also obtained a certification for Style 2015 from Underwriters Laboratories, known as UL. UL conducted extensive testing to satisfy the National Fire Protection Association Standard 2112. (ECF No. 141, PageID.5744; ECF No. 167, PageID.7302–03.)

On or around June 2016, Carhartt tested finished pieces of Style 2015 fabric and discovered that the pieces did not meet its flame-resistance specifications. (*Id.* at PageID.5967.) Carhartt notified Innovative, which then tested samples of Style 2015 fabric, including samples manufactured as early as 2014, and found that the samples did not pass the tests. (*Id.*) Gentry Mills experienced operation malfunctions in its tenter frame machinery at some point in 2016, which affected its temperature zones and corresponds in time to the discovery of the testing failures. (ECF No. 157, PageID.6843.)

Carhartt issued a "voluntary product notification," essentially a voluntary recall, of the garments that had been made from Style 2015. (ECF No. 148-13, PageID. 6118.) No one reported injuries from the products made from Style 2015. (ECF No.141, PageID.5736.)

**B. Procedural Background**

After Carhartt sued Innovative, Innovative brought a third-party complaint against Gentry Mills. (ECF No. 8.) The Court then granted Gentry Mills' motion to dismiss. (ECF No. 33.) Innovative moved to amend its third-party complaint against Gentry Mills (ECF No. 34), and the Court granted Innovative's motion. (ECF No. 36.)

5

Innovative's amended third-party complaint included eight causes of action against Gentry Mills. (ECF No. 37.) Gentry Mills moved for reconsideration of the Court's order granting Innovative leave to amend its third-party complaint. (ECF No. 39.) The Court denied in part and granted in part Gentry Mills' motion for reconsideration. (ECF No. 53.) The only count remaining is Innovative's claim for breach of express contract for finishing services against Gentry Mills.[4] (*Id.*)

## II.  Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light

---

[4] Innovative filed a second amended third-party complaint against Gentry Mills, which included all previously dismissed claims. (ECF No. 92.) Gentry Mills and Innovative stipulated that the dismissed claims were restated in that complaint "only to preserve any right to appeal that previous dismissal." (ECF No. 121.) The Court will not address claims in Innovative's second amended third-party complaint that were already dismissed.

6

most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

### III. Analysis

Innovative's operative complaint sets forth two theories in one count for breach of express contract against Gentry Mills. (ECF No. 92, PageID.3942.) Innovative's first theory is that Gentry Mills failed to include chemical additives in the DWR to overcome the increase in flammability caused by DWR. (*Id.*) Innovative's second theory of liability is that Gentry Mills experienced operation malfunctions in its tenter frame machinery at some point in 2016, which affected its temperature zones and led to improper curing of the fabric. (*Id.*) For the reasons set forth below, neither theory survives Gentry Mills' motion for summary judgment.

### A. Applicable Breach of Contract Law

As has previously set forth, North Carolina law applies to Innovative's only remaining claim for breach of contract. (ECF No. 53.) The Court has previously ruled that the contract between Gentry Mills and Innovative is a contract for services, not goods. The contract was

specifically for the chemical treatment and finishing services for Style 2015. (*See* ECF No. 53, PageID.1614.) Under North Carolina law, a party alleging a breach of contract must demonstrate (1) the existence of a valid contract, (2) breach of the terms of the contract, and (3) damages. *Martinez v. Univ. of N. Carolina*, 223 N.C. App. 428, 432 (2012) (quoting *Long v. Long*, N.C. App. 664, 668 (2003)); *Johnson v. Colonial Life & Acc. Ins. Co.*, 173 N.C. App. 365, 370–71 (2005).

### B.   Flame-Resistant Additives to DWR

Innovative's first breach of contract theory can be dispensed with because Innovative has conceded to its dismissal. Innovative's position in its complaint is that Gentry Mills "fail[ed] to include a flame-resistant additive in the durable water repellant finish, and to ensure that flame-resistant chemicals were applied and properly cured. . ." (ECF No. 92, PageID. 3924.) In its brief and at the hearing, counsel for Innovative conceded that it abandoned this claim.[5] (ECF No. 157, PageID.6849.)

---

[5] The Court notes that at the hearing, counsel for Gentry Mills' indicated that significant resources were spent in discovery defending against this claim. Further, counsel for Gentry Mills indicated that Innovative's unexpected abandonment of this claim calls into question whether it should have voluntarily dismissed it before such resources were spent earlier. Nevertheless, it is dismissed now.

Accordingly, Gentry Mills' motion for summary judgment on this claim is granted and the claim is dismissed with prejudice.

### C. Tenter Frame Malfunction

Innovative's second theory of liability is also unsuccessful. Innovative argues that Gentry Mills' operation malfunction in the tenter frame breached the parties' contract. Gentry Mills sets forth several arguments in support of its motion for summary judgment which will be addressed in turn.

As an initial matter, Gentry Mills' contends that since the Court already ruled that Innovative's only remaining claim is for express breach of contract in the Court's order granting Innovative leave to amend its third-party complaint, (ECF No. 53) any claims regarding operation malfunctions in the tenter frame machinery cannot be sustained since they were not specified in the purchase orders. In the earlier opinion and order, the Court held that Innovative had stated a claim regarding "the application of the correct chemical and proper curing process," (ECF No. 53, PageID.1614) and also "machinery and equipment failures in 'heating zones' that resulted in 'inconsistencies and

9

variations in the chemical and application and curing process.'"[6] (*Id.* (citing ECF No. 37.)) Gentry Mills argues that it correctly cured the chemicals on the Style 2015 fabric despite its operation malfunctions in the tenter frame machinery and that Innovative's own representatives testified that they do not have evidence otherwise. Gentry Mills argues that when the operation malfunctions in the tenter frame machinery occurred, it developed a solution. Gentry Mills representative Ashok Dhingra, who is a plant manager and managing director for Gentry Mills, testified in his deposition that when the operation malfunctions occurred,

> [o]ne of the ways you can fix it is by compensating the treatment time [. . .] We need to have a certain amount of curing time to cure any chemical [. . .] [I]f one of the zones is not working we will cut down the speed of finishing. By cutting down the speed of the finishing we will give exactly the same amount of curing time by reducing the speed of the machine without affecting the treatment[.]

(ECF No. 148-6, PageID.6055.)

In response, Innovative first points to the allegations in its second amended complaint regarding raised temperatures in the tenter frame.

---

[6] Innovative's second amended third-party complaint reflects these two claims related to chemical additives and the curing process. (ECF No. 92.)

10

(ECF No. 157, PageID.6851.) Innovative does not explain how an allegation regarding a raised temperature is related to the operation malfunctions in the tenter frame machinery. Moreover, allegations in a complaint, without more, are not enough to overcome a motion for summary judgment. Therefore, this argument is not successful.

Innovative also argues that Gentry Mills "ignores testimony indicating the unexpected observation of increased temperatures or open equipment doors" on the tenter frame, and cites to the deposition of Richard Gibson, an Innovative employee.[7] (*Id.*) The transcript portion itself also indicates that Gibson was testifying regarding his theory that failure to add chemical additives to DWR caused the testing failures—a theory that has already been dismissed—when he mentioned that he once saw, "[d]oors open, things like that" on the tenter frame. (ECF No. 157-9, PageID.6903.) Innovative never explains how or why allegations regarding open doors in an unspecified time period have anything to do

---

[7] Unfortunately, Innovative never explains who Richard Gibson is, and the exhibit with portions of his deposition transcript fails to include any preliminary background testimony so the Court could discover on its own who he is. The Court learn that Gibson works in development for Innovative from a paragraph in the middle Innovative's expert report. (ECF No.157-15, PageID.6924.)

11

with the operation malfunctions in the tenter frame machinery in 2016. Therefore, there is no material question of fact for a jury to decide on this theory of liability.

Next, Innovative argues that the Court should rely on its expert report which, it alleges, "stands unrebutted, and at minimum creates a genuine issue of material fact." (ECF No. 157, PageID.6852.) However, an expert report alone can rarely create a question of fact, particularly when the expert's opinion is conclusory. *See Auto Techs. Int'l Inc. v. Delphi Corp.*, 776 F. Supp. 2d 469, 478 (E.D. Mich. 2011) ("While an expert's declaration may be of use to a court in deciding whether there is a genuine dispute of material fact, such a declaration is not necessarily capable of creating a genuine dispute and thereby defeating a motion for summary judgment on its own. . . Thus, in evaluating the motions for summary judgment, the court looks to whether the underlying facts are in genuine dispute, not to whether Plaintiff's expert's reading of the prior art creates a dispute.")

Additionally, Innovative's co-founder John Wasylyk acknowledged in his deposition that he does not know the root cause of the testing failures:

> Q: Has Innovative come to a conclusion as to the cause of these test failure results?
>
> A: No.

(ECF No. 148-4, PageID.6005.) He also testified that he had "no direct evidence" that a processing problem at Gentry Mills caused the testing failures. (*Id.* at 6011.) Innovative has not provided any other deposition testimony or evidence that the mechanical issue at Gentry Mills breached the parties' contract or otherwise caused the test failure.

Although when deciding motions for summary judgment, the Court must "assume the truth of the non-moving party's evidence, drawing all inferences in a light most favorable to that party," *Mullins v. Cryanek*, 805 F.3d 760, 765 (6th Cir. 2015), Innovative does not set forth any evidence in support of its theory that the operation malfunctions in the tenter frame machinery breached the parties' contract. (ECF No. 157.) Accordingly, Gentry Mills' motion for summary judgment is granted and this claim is dismissed.

### IV. Conclusion

For the reasons set forth above, the Court GRANTS Gentry Mills' motion for summary judgment. Innovative's third-party claims against Gentry Mills are dismissed with prejudice.

13

IT IS SO ORDERED.

Dated: April 27, 2020      s/Judith E. Levy
Ann Arbor, Michigan     JUDITH E. LEVY
    United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 27, 2020.

    s/William Barkholz
    WILLIAM BARKHOLZ
    Case Manager