# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Carhartt, Inc.,

                Plaintiff,        Case No. 17-13604

v.                          Judith E. Levy
                                United States District Judge
Innovative Textiles, Inc., and
Innovative Textiles, LLC,      Mag. Judge R. Steven Whalen

                Defendants/
                Third-Party
                Plaintiffs,

v.

Gentry Mills, Inc.,

                Third-Party
                Defendant.

_____/

# OPINION AND ORDER GRANTING IN PART AND DENYING IN PART REMAINING CLAIMS IN INNOVATIVE TEXTILES, INC. AND INNOVATIVE TEXTILES, LLC'S MOTION FOR SUMMARY JUDGMENT AND DENYING REMAINING CLAIMS IN CARHARTT, INC.'S MOTION FOR <u>SUMMARY JUDGMENT [141, 151]</u>

On February 24, 2020, the Court granted partial summary judgment in favor of Innovative Textiles, Inc. and Innovative Textiles,

LLC,[1] resulting in the dismissal of five of Carhartt's claims. (ECF No. 206.) The Court did not issue a decision on two of Carhartt's claims—breach of contract and breach of express and implied warranties[2]—at that time. Those claims are now before the Court. (ECF No. 141, 151.) For the reasons set forth below, Innovative's motion for summary judgment is granted in part and denied in part and Carhartt's motion for summary judgment is denied.

## I.     Background

The background of this case was thoroughly set forth in the Court's two previous opinions and orders on the motions for summary judgment filed by Innovative, Carhartt, and now-dismissed third-party Defendant Gentry Mills', and both background sections are incorporated here by reference. (ECF No. 206, PageID.8559–8563; ECF No. 208, PageID.8583–8587.)

---

[1] Innovative Textiles, Inc. transferred its assets to Innovative Textiles, LLC in 2015. (ECF No. 157, PageID.6839.) Innovative asserts that, "the distinction between these companies is not relevant to the issues addressed in this motion." (*Id.*) Accordingly, both Innovative Textiles, Inc. and Innovative Textiles, LLC will be referred to collectively as "Innovative."

[2] Carhartt's successor liability claim is against Innovative Textiles, LLC and is based on the same breach of contract and warranty claims; the analysis is the same for both entities.

As set forth in those opinions and relevant here, the parties do not dispute that Carhartt contracted with Innovative to design and develop a fabric with flame-resistant properties, known as Style 2015. Carhartt accepted multiple deliveries of Style 2015 fabric from Innovative during the relevant time between 2014 and 2016. Carhartt used the fabric to make flame-resistant garments for oil and gas industry workers.

As part of the parties' contract, Innovative contracted with a third-party to conduct flame-resistance testing of the fabric before shipping it to Carhartt. The fabric passed the tests. Then, in June 2016, Carhartt re-tested the fabric for the first time and discovered that it did not pass two flame-resistance tests. Together, the parties re-tested older rolls of Style 2015 fabric dating back to 2014 and discovered that those rolls also failed flame resistance tests.

Style 2015 fabric was partially composed of modacrylic fibers, which are acrylic fibers with inherently flame-resistant properties. (ECF No. 141, PageID.5732–33.) During the parties' June 2016 investigation of the root cause of the testing failures, Carhartt contends that it discovered for the first time that, in approximately 2013, Innovative switched from a modacrylic fiber called Protex-C to a different modacrylic

3

fiber called F-12. (ECF No.167, PageID.7303.) Carhartt attributes the June 2016 test failures to Innovative's fiber change. (*Id.* at 7304.)

## II.   Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   Analysis

## A. Carhartt's Claims

Carhartt sets forth two theories of liability for its breach of contract claim. First it argues that Innovative breached the parties' contract "by failing to provide fabric that complied with the flame resistant specifications of the product specifications." (ECF No. 151, PageID.6209.)

4

Second, it argues that Innovative breached the parties' contract when it changed the modacrylic fiber type without obtaining Carhartt's prior written consent. (ECF No. 151, PageID.6210.)

As to Carhartt's breach of warranty claim, Carhartt contends that it relied on Innovative to develop a fabric that met its specifications for the purpose of selling protective apparel lines to the oil and gas industries. (ECF No. 151, PageID.6213.) It contends that Innovative knew this and, when the fabric failed re-testing in June 2016, Innovative breached the contract warranties. Carhartt and Innovative's contract provided for the following express warranties:

> [Innovative] warrants that all goods and services covered by the Order will: (i) conform to the specifications, drawings, samples or descriptions furnished or approved by Carhartt; (ii) be of good quality and workmanship; (iii) be free of defects in design (unless Carhartt provided the design), materials and workmanship; (iv) be merchantable; (v) be fit for the particular purposes intended by Carhartt; and (vi) comply with all applicable consumer, environmental, occupational, safety, health and other laws, rules and regulations applicable to the design, manufacture, function or use of the goods or services. [Innovative] acknowledges that it knows of Carhartt's intended use and expressly warrants that all goods and services covered by the Order which have been selected, designed, manufactured or assembled by [Innovative], based upon Carhartt's stated use, will be fit and sufficient for the particular purposes intended by Carhartt and shall have been

tested to and comply *at all times* with the specifications provided
by Carhartt.

(ECF No. 151-11, PageID.6428 (emphasis added).) Carhartt does not set

forth any specific implied warranties that it alleges existed between the

parties. *See* Mich. Comp. Laws §§ 440.2313; 440.2314; 440.2315.

## B.   Applicable Law

The parties' cross-motions regard Carhartt's breach of contract and

breach of warranty claims. The parties do not dispute that Michigan law

applies. Under Michigan law, the elements of a breach of contract claim

are that: "(1) a contract existed between the parties,[3] (2) the terms of the

contract required performance of certain actions, (3) a party breached the

contract, and (4) the breach caused the other party injury."[4] *Green Leaf*

*Nursery, Inc. v. Kmart Corp.*, 485 F. Supp.2d 815, 817 (E.D. Mich. 2007)

(citing *Burton v. William Beaumont Hosp.*, 373 F. Supp.2d 707, 718 (E.D.

---

[3] The parties do not dispute that the contract between them consisted of the following: (1) product specifications, (2) purchase orders, and (3) Carhartt's standard terms and conditions. (ECF No. 151, PageID.6208.)

[4] Carhartt does not indicate what amount of damages it sustained as a result of the alleged breach. However, in its complaint, Carhartt alleges that, between the recalled garments and unused rolls of fabric, it "estimates that the total value of the Damaged Carhartt Garments diminished by approximately $13 million." (ECF No. 82, PageID.3646.)

Mich. 2005)). The Michigan Uniform Commercial Code (UCC), Michigan Compiled Laws § 440.2102 *et seq.*, also applies because the dispute involves the sale of goods—specifically, the Style 2015 fabric that Innovative designed and developed for Carhartt between 2014 and 2016.

### C.   Innovative's Motion for Summary Judgment

#### 1.   *Failure to discover the non-conformity within a "reasonable time"*

Innovative's first argument is that Carhartt is barred from asserting a breach of contract claim under the Michigan UCC, because it failed to notify Innovative within a "reasonable time" that it knew or should have discovered the breach. Mich. Comp. Laws § 440.2607 (§ 2607). The Michigan UCC states that a buyer may accept goods, reject goods, or revoke acceptance within a "reasonable time" if a non-conformity substantially impairs the value of the goods. Mich. Comp. Laws §§ 440.2606; 2607; 2602; 2608. Here, Carhartt accepted the fabric from Innovative from 2014 to 2016, so the following statutory framework for acceptance applies:

(3) Where a tender has been accepted

(a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy;  […]

7

Mich. Comp. Laws § 440.2607. The Michigan UCC defines "reasonable time" as dependent "on the nature, purpose, and circumstances of the action." Mich. Comp. Laws § 440.1205. The purpose behind the discovery and notice requirement is:

> (1) to prevent surprise and allow the seller the opportunity to make recommendations . . . , (2) to allow the seller the fair opportunity to investigate and prepare for litigation, (3) to open the way for settlement of claims through negotiation, and (4) to protect the seller from stale claims and provide certainty in contractual arrangements.

*679637 Ontario Ltd. v. Alpine Sign and Printer Supply, Inc.*, 758 F. App'x 485, 488 (6th Cir. 2019) (quoting *Am. Bumber & Mfg. Co., v. Transtechnology Corp.*, 252 Mich. App. 340 (2002)).

"Whether a reasonable time has elapsed is generally a question for the trier of fact." *Bev Smith v. Atwell*, 301 Mich. App. 670, 681 (2013) (citing *Moore v. First Security Cas. Co.*, 224 Mich. App. 370, 379 (1997)). However, "[i]f reasonable minds could not differ . . . the question of what constitutes a reasonable time should be decided on summary [judgment] as a matter of law." *Id.* (citing *Computer Network, Inc., v. AM Gen. Corp.*, 265 Mich. App. 309, 322 (2005)).

8

Innovative cites two cases, *Bev Smith* and *Ontario*, that are instructive in determining whether Carhartt notified Innovative of the nonconformity within a reasonable time. In *Bev Smith*, 301 Mich. App. 670, the defendant purchased a rare 1965 Dodge vehicle that had been owned by a "legendary drag racer Dave Strickler." *Id*. at 672. Before the defendant's ownership of the Strickler Dodge, the vehicle was only a "body shell on wheels" with "no engine" and "no transmission." *Id*. at 673. The defendant spent ten years restoring the vehicle using as many 1965 replacement parts as possible. *Id*. The defendant believed he had restored the vehicle to the "real and authentic" state as when Strickler owned it. *Id*. In 2007, the defendant sold the vehicle to the plaintiff. *Id*. at 675. Before the sale, the defendant provided the plaintiff with a binder containing extensive information and documentation pertaining to the vehicle, including historical photographs and other notes regarding the alterations and restorations, and the plaintiff confirmed he had reviewed its contents. *Id*. at 674–75. After purchasing the vehicle, the plaintiff made alterations to it for his own preferences. *Id*. at 676. Then, in 2008 at a classic car event, a car historian informed the plaintiff that the

9

vehicle had a "donor body," very few original parts, and was not the "real" Strickler Dodge. *Id*. The lawsuit followed.[5]

The Michigan Court of Appeals analyzed when the plaintiff buyer "should have discovered any breach." *Id*.; *and see* Mich. Comp. Laws § § 440.2607(3)(a). It concluded that "[p]laintiff should have discovered any alleged breach of contract relating to the authenticity of the Dodge shortly after purchasing it." *Id*. at 687. The court noted,

> [t]he fact that plaintiff had a full and fair opportunity to inspect the Dodge prior to purchasing it, and an even greater opportunity to inspect the Dodge after purchasing it, necessarily shortened the allowable period for discovering any nonconformities or inauthenticities. […] [Q]ualities that are apparent . . . reasonably should be inspected and complained of soon after the goods . . . have been delivered.

*Id*. at 686 (citing *P&F Constr. Corp. v. Friend Lumber Corp. of Medford*, 31 Mass. App. 57, 60 (1991)). In conclusion, the court found that the plaintiff's one year delay between purchasing the vehicle in 2007 and discovering its potential inauthenticity in 2008 was longer than "reasonable" under the Michigan UCC. *Id*.

---

[5] Unlike *Bev Smith*, here, neither party alleges that Carhartt waited too long to notify Innovative about the nonconformity after discovering it in June 2016. Rather, the question here is whether Carhartt failed to discover the nonconformity with a "reasonable time."

Innovative also cites to *Ontario*, 758 F. App'x 485. In *Ontario*, the plaintiff manufactured large tarps printed with advertisements that customers would affix to the sides of tractor trailer trucks. Beginning in 2010, the plaintiff purchased an industrial laminate from the defendant, which the plaintiff used to shield the tarps from the environment and to facilitate cleaning. *Id*. at 486. Beginning in 2011, the plaintiff received "occasional" complaints from customers that the tarps trapped and retained dirt. The occasional complaints continued through 2013. Then, in spring 2014, the number of complaints "sky rocketed." *Id*. Only then did the plaintiff conduct testing and determine that the defendant's laminate caused tarps to trap and retain dirt. *Id*. The lawsuit followed.

The Sixth Circuit analyzed whether the plaintiff discovered the cause of the tarp failures within § 2607's "reasonable time" requirement. It upheld the district court's determination that "the time at which a buyer 'could have discovered [a breach] . . . by means of an inspection or an expert appraisal,' informs when he 'should have discovered' the breach under section 440.2607(3)(a)." *Id*. at 488 (citing *Bev Smith*, 301 Mich. App. at 681–82). There, the Court found that the "clock" started running

11

"in the fall of 2011 when [the plaintiff] received its first customer complaints." *Id*. at 487.

Applying the holdings of *Bev Smith* and *Ontario* to this case, Carhartt had ample opportunity to discover the nonconformity. Carhartt accepted Style 2015 fabric from Innovative throughout 2014, 2015, and 2016. Carhartt had a "full and fair opportunity" to inspect and test the fabric for fire resistance conformity immediately upon receipt. This is particularly true since Carhartt used the fabric to make garments and this process of altering the condition of the fabric from a roll to a garment provided ample opportunity for a thorough inspection.

Carhartt could have inspected, tested, and discovered the nonconformity earlier than June 2016, as illustrated by the following uncontroverted evidence. First, there is a June 2, 2008 email from Carhartt's Demand Fulfillment Fabric and Testing Manager, where she communicates to Innovative the following contract term:

Step 3: Random Testing of Piece Goods by Carhartt:

A.) The production fabric specifications will become our benchmark for testing of the piece goods you provide us. Throughout the program/season, we will do regular, random testing on the piece goods that are received from you. We will

test the piece goods against the production fabric spec. Piece goods that do not meet the production spec will not be accepted.

(ECF No. 144, PageID.5936.) This term confirms that Carhartt had the ability and reserved the right at all times to conduct regular, random testing of Style 2015 to confirm it met Carhartt's specifications.

Carhartt argues that it never meant the above-quoted paragraph to include flame-resistance testing; rather, Carhartt contends that this provision applied to "visual and shrinkage testing." (ECF No. 167, PageID.7302.) However, the plain and unambiguous language of the contract does not specify "visual and shrinkage," or any other limits on the type of testing Carhartt could conduct.

When contract language is unambiguous, the Court must enforce the contract "as written." *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 823 (6th Cir. 2012). Ambiguity of meaning can create a question of fact, but the Court cannot "impose an ambiguity on clear contract language." *Id*. Carhartt did not provide the Court with any evidence or information that would justify imposing an ambiguity in these terms, and therefore the Court declines to do so.

Also, both Carhartt's Director of Product Development, Quentin Bonner's, and its Director of Quality, Joe Don Long's testified that

Carhartt could have conducted flame-resistance testing through the years, but never actually did so until May or June 2016. (ECF No. 141-4, PageID.5786; 5789; ECF No. 141-10, PageID.5806.)  This uncontroverted testimony further demonstrates Carhartt's "full and fair opportunity" to inspect and test the fabric for fire-resistance conformity is

Carhartt's contends that it did not have a "contractual duty" to perform flammability tests; rather, it delegated that duty to Innovative. This argument is not persuasive because Carhartt did not need a contractual duty to re-test the goods it received for conformity with its specifications. The UCC provides protection for both buyers and sellers for this precise circumstance by outlining a buyer's right to inspect the goods on delivery and then accept, reject, or partially reject tender if the goods "fail in any respect to conform to the contract." Mich. Comp. Laws § § 440.2513; 440.2601. And in fact, Carhartt did inspect the goods and re-test them for conformity for the first time in June 2016. Accordingly, the Court rejects Carhartt's argument that it had no duty to thoroughly inspect the goods to ensure their conformity with the parties' contract.

Carhartt also argues that "even if Carhartt has [sic] performed flammability testing on receipt, it would likely not have caught the latent

defect." (ECF No. 167, PageID1372, fn. 13.) The Court rejects Carhartt's "latent defect" argument because Carhartt did not present the Court with sufficient evidence to create a genuine dispute of a material fact regarding this theory. Moreover, Carhartt's "latent defect" argument is belied by the fact that the fabric received in June 2016 failed contemporaneous re-testing. Carhartt has not set forth an explanation for why the older fabric would have had a latent defect on arrival, but the fabric received in June 2016 failed when tested immediately that same month. Accordingly, Carhartt's "latent defect" argument is nothing more than speculation and does not raise a material question of fact.

Carhartt next cites to a provision in the parties' contract which, Carhartt argues, eviscerates the "reasonable time" provision under the law. The contract states:

> Carhartt shall promptly notify Vendor after it becomes aware of any damage to or loss of goods in transit, or defects in the goods discovered upon visual inspection. The fact that Carhartt may have inspected, tested or failed to inspect or test any goods shall not affect any rights of Carhartt under the Order or otherwise . . . Carhartt's inspection of the goods, whether during manufacture, prior to delivery, or within a reasonable time after delivery, shall not constitute acceptance of any work-in-progress or finished goods. Nothing in the Order shall relieve Vendor from any obligation to inspect or test the goods.

(ECF No.151-11, PageID.6426.) Carhartt urges that this provision gave it an unlimited time to discover any defects after tender. However, as further set forth below in Section (C)(2), the "reasonable time" after tender of delivery for discovery of a defect under the Michigan UCC still applies, particularly since Carhartt did not define a finite extension period in the contract.

In sum, the Court finds as a matter of law that Carhartt did not discover the majority of the nonconformities in the Style 2015 fabric received between 2014 and 2016 within the Michigan UCC § 2607's "reasonable time" standard. However, the time frame contemporaneous with the June 2016 testing, May 1, 2016 through June 3, 2016, was discovered within a reasonable time. Accordingly, Innovative's motion for summary judgment is granted as to the fabric Carhartt received before May 1, 2016. Innovative's motion for summary judgment is denied for the fabric received after May 1, 2016.

### 2. *Compliance "Upon Tender"*

Innovative next argues that the fabric complied with the contractual terms "upon tender," and that nothing more was required of

it under the Michigan UCC. Innovative cites to the following Michigan UCC provision in support of this argument:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Mich. Comp. Laws § 440.2725(2) (§2725(2)). To be clear, neither party claims that there is a statute of limitations issue in this case. Innovative instead focuses on the "when tender of delivery is made" provision, arguing that, since there was no explicit extension to future performance of the goods and discovery of the breach, the tender period is the only period that Innovative was contractually obligated to comply with Carhartt's specifications. (ECF No. 141, PageID. 5746.)

Innovative also argues that the fabric did, in fact, comply at tender and it points to Carhartt's internal "question and answer" document regarding the recall, which states:

> Q: Which FR test indicated there was an issue with the garments?

> A: The products passed initial testing as required by NFPA 2112 and NFPA 70 E standards. During Carhartt's quality control

17

testing we discovered the affected products may not meet the requirements of the vertical flame test ASTM D6413.

(ECF No. 146, PageID.5949.)

The Michigan UCC § 2725(2) concerns the statute of limitations, and not the time by which goods must continue to conform after tender. Accordingly, the Court denies Innovative's motion for summary judgment on this argument.

The Court need not address Carhartt's response except to note that it rejects Carhartt's position that the warranties last in perpetuity under the following contractual provision:

> Vendor acknowledges that it knows of Carhartt's intended use and expressly warrants that all goods and services covered by the Order which have been selected, designed, manufactured or assembled by Vendor, based upon Carhartt's stated use, will be fit and sufficient for the particular purposes intended by Carhartt and shall have been tested to *and comply at all times* with the specifications provided by Carhartt.

(ECF No.151-11, PageID.6428 (emphasis added).) The case law upholds extensions to a future period only when expressly defined. "For a warranty to extend to future performance, it must expressly define the future period to which it applies." *Grosse Pointe Law Firm, PC v. Jaguar Land Rover N. Am., LLC*, 317 Mich. App. 395, 401 (2016) (citing *Sherman*

*v. Sea Ray Boats, Inc.*, 251 Mich. App. 41, 57 (2002)); *see also Executone Bus. Sys. Corp. v. IPC Commc'ns, Inc.*, 177 Mich. App. 660 (1989) (discussing a defined period of thirteen months). The "and comply at all times" language is not an expressly defined future period and does not extend the warranty in perpetuity.

For the reasons set forth above, Innovative's "upon tender" argument does not support summary judgment and therefore its motion is denied.

### D. Carhartt's Motion for Summary Judgment

#### 1. Failure to Comply with Flame Resistance Specifications

Next, the Court will address Carhartt's motion for summary judgment as it regards the remaining May 1, 2016 through June 3, 2016 time frame. Carhartt's position is that June 2016 re-testing results themselves, which showed that "many rolls" of fabric failed Carhartt's after-flame and char length requirements, breached the parties' contract. However, the re-test failures do not automatically confer summary judgment on Carhartt. Carhartt must still prove causation and for the reasons set forth below, Carhartt has not met its burden at this stage.

Carhartt contends that the following evidence supports summary judgment in its favor. First, it cites to a portion of Innovative co-founder John Wasylyk's deposition testimony. Wasylyk testified that Innovative agrees that there were testing failures of Style 2015 discovered on June 3, 2016. (ECF No. 151, PageID.6209–10.) However, review of Wasylyk's testimony in context reveals that he did not admit that Innovative was responsible for causing the failures; he merely admitted that nonconformities were discovered on re-testing.

Carhartt next supports its motion by citing to Innovative co-founder Michael Byles' deposition testimony, where he stated that Innovative does not dispute that there were "clear failures" of Style 2015 as of June 3, 2016. (*Id.* at PageID.6210.) Again, this admission of the June 2016 re-test failure, when read in context, does not address causation.

Innovative's position is that the fabric complied with the contractually required flame resistance testing before it arrived at Carhartt. As set forth above in Section (C)(2), Carhartt's internal "question and answer" document contains an admission of this fact, where it states, "[t]he products passed initial testing as required by NFPA 2112 and NFPA 70 E standards." (ECF No. 146, PageID.5949.)

Ultimately, Carhartt's admission that "the parties do not know the root cause" of the re-testing failures is the remaining issue of material fact in dispute. (*Id.* at 6209.) Accordingly, Carhartt's theory, in absence of proof of causation, cannot support summary judgment in its favor.

### 2. *Failure to Obtain Consent Before Changing Fabric Design*

Carhartt's second argument is that Innovative breached the parties' contract "by failing to obtain written consent before making changes to the design of the Style 2015 product." (ECF No. 151, PageID.6210.) It alleges that Innovative breached the parties' contract by switching the modacrylic fiber from Protex-C to F-10 without permission. (*Id.*)

The provision Carhartt alleges that Innovative breached when it changed the fiber type is the following: "Vendor may make changes to the Order or to the design or specifications of the goods or services only when authorized by Carhartt in writing." (ECF No. 151-11, PageID.6427.)

Innovative disagrees. First, it contends that it "occasionally mentioned" the fiber switch over the years and that Carhartt never required that the change be formalized in writing. (ECF No. 141, PageID.5733.) Innovative also contends that its contract with Carhartt

21

required only that it use modacrylic fiber, "but did not specify a particular kind of modacrylic fiber." (*Id.*)

The contract states only the following terms: "Fiber content: 58% cotton/35% modacrylic fiber/7% polyester," and that the fiber Innovative chose complied with these terms.[6] (ECF No. 162-5, PageID.7093.) Innovative also argues that there "was no difference" between the new and old fiber type. (ECF No. 141, PageID.5736.) Innovative further argues that the expert reports in this case establish a disputed question of fact as to whether the modacrylic fiber change had anything to do with the later fire-resistance test failures. (ECF No. 162, PageID.7041.)

The Court agrees with Innovative that the contract itself does not specify Protex-C or any other type of modacrylic fiber. It only set forth the content percentage requirements. Where, as here, the contract language is unambiguous, the Court must enforce the contract "as written." *Chungag*, 489 F. App'x at 823. Carhartt did not provide the Court with any evidence or information that would justify

---

[6] Carhartt never argues that the modacrylic fiber switch failed to comply with the required fiber content percentages set forth above. Accordingly, even if it did, this argument is waived.

finding an ambiguity in these terms and imposing Carhartt's interpretation. Accordingly, Innovative's change from Protex-C to F12 modacrylic fiber did not, as a matter of law, constitute a "change[ ] to the Order or to the design or specifications of the goods," requiring written consent. Thus, failure to obtain consent was not in breach of the parties' contract. Moreover, if Carhartt desired a specific type of modacrylic fiber or wanted to include modacrylic fiber type in the contract, it could have done so.

Perhaps more importantly, however, is that a question of material fact remains as to the root cause of the re-testing failures. Accordingly, the Court denies Carhartt's motion for summary judgment on its breach of contract claims.

## E. Carhartt's Motion for Summary Judgment on Breach of Warranty

Carhartt also seeks summary judgment on its breach of warranty claim against Innovative. Carhartt's arguments overlap with the arguments it makes in its response to Innovative's motion for summary judgment, which have been analyzed at length in Section C, set forth above. Although the Court does not accept Innovative's "upon tender" theory, this does not automatically confer summary judgment on

Carhartt's theory that the warranties were intended to last in perpetuity. Nor does Carhartt provide any legal support for this argument. Accordingly, and for the reasons set forth in Section C, Carhartt's motion for summary judgment on its breach of warranty claims is denied.

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part Innovative's motion for summary judgment (ECF No. 141) and denies Carhartt's motion for summary judgment. (ECF No. 151.)

IT IS SO ORDERED.

Dated: June 15, 2020          s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 15, 2020.

                              s/William Barkholz
                              WILLIAM BARKHOLZ
                              Case Manager